UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                :
UNI-WORLD CAPITAL L.P., UNI-WORLD CAPITAL  :
AIV, L.P, FRAGRANCE HOLDINGS, LLC and         :
FRAGRANCE ACQUISITIONS, LLC,                       :
                                                                :
                                    Plaintiffs,              :
                                                                :
                    -v-                                       :
                                                                :
PREFERRED FRAGRANCE, INC., HARRY          :
POLATSEK, EZRIEL POLATSEK, SARAH             :
POLATSEK, SOLOMON TYRNAUER,                   :
BENT PHILIPSON, BENJAMIN LANDA,              :
and JOSEPH RUBINSTEIN,                               :
                                                                :
                                    Defendants.           :
                                                                :
------------------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/21/2014

13 Civ. 7204 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

Before the Court is plaintiffs' motion for leave to amend their Amended Complaint. For

the reasons that follow, that motion is granted as to plaintiffs' applications to add Count 10, for

breach of contract, against Ezriel Polatsek; to add Count 13, for unjust enrichment, against

Abraham Polatsek, Ouleaf, Qian Liu, and Onlyou; and to amend the Amended Complaint's

factual allegations. In all other respects, the motion is denied.

## I.    Background and Procedural History

The Court assumes familiarity with the facts of this case, including specifically those set

out in the Court's previous written decisions, issued in March 2014, *see* Dkt. 58, and July 2014,

*see* Dkt. 156. In brief, Ezriel Polatsek ("Ezriel") was the founder and CEO of an imitation

perfume company, Preferred Fragrance, Inc. ("Preferred Fragrance"), which he sold to plaintiffs

in October 2011.[1]  As part of that transaction, Ezriel became president and COO of the new company, Fragrance Acquisitions, LLC ("Fragrance Acquisitions"), and he signed a pair of non-compete agreements.  In October 2013, plaintiffs fired Ezriel.  Plaintiffs then brought this action, alleging, *inter alia*, fraud in connection with the sale of the company.  *See* Dkt. 1 ("Complaint"). Relevant here, they also alleged that Ezriel had violated his non-compete agreements by engaging in the fragrance business in connection with two entities, Exceed LLC ("Exceed") and Ouleaf Inc. ("Ouleaf"), that competed with plaintiffs' business.

### A.  The Motions to Dismiss or Stay and the Brooklyn Action

On December 17, 2013, two sets of defendants filed separate motions to dismiss or stay this action in favor of an action that had been filed by certain defendants in New York Supreme Court in Kings County (the "Brooklyn Action").  They argued that this Court should abstain from hearing this case under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976).  Dkt. 23, 27.  Defendants also argued that plaintiffs' sole federal claim, under Rule 10b-5, was deficiently pled, because it did not allege that defendants "used the mails or other instrumentalities of interstate commerce to commit the alleged fraud."  Dkt. 24 at 21.

On January 7, 2014, plaintiffs filed the Amended Complaint, which attempted to cure the asserted defect in the 10b-5 claim.  *See* Dkt. 32 ¶ 130.

On January 24, 2014, the same two sets of defendants again moved to dismiss or stay this action in favor of the Brooklyn Action, under *Colorado River*.  Dkt. 34, 37.  On March 6, 2014,

---

[1] For the sake of clarity, because there are multiple Polatseks involved in this case, the Court refers to each Polatsek by first name.

after briefing and argument, the Court declined to abstain from exercising jurisdiction and denied defendants' motions to dismiss.[2]  Dkt. 56, 58.

On March 20, 2014, both sets of defendants filed separate Answers, with defendants Harry, Ezriel, and Sarah Polatsek and Preferred Fragrance also asserting counterclaims against plaintiffs.  Dkt. 74, 76.  No defendant moved to dismiss any claim.  On April 14, 2014, plaintiffs answered the counterclaims.  Dkt. 108.  On May 1, 2014, the Polatseks and Preferred Fragrance submitted an Amended Answer and Counterclaims.  Dkt. 112.  On May 22, 2014, plaintiffs answered the amended counterclaims.  Dkt. 127.

**B.  The Motions for Preliminary Relief**

On March 3, 2014, plaintiffs applied, based on limited documentary evidence, for a temporary restraining order and preliminary injunction to prevent Ezriel from violating the non-compete agreements.  *See* Dkt. 52.

On March 14, 2014, after briefing, the Court issued an opinion from the bench, denying the motion without prejudice but also setting a schedule for expedited discovery with regard to the non-compete issue.  Dkt. 68, 101.

On May 1, 2014, after expedited discovery had been taken, plaintiffs renewed their motion for a preliminary injunction against Ezriel.  Dkt. 113.

On July 10, 2014, after briefing, argument, and three days of evidentiary hearings, the Court issued a preliminary injunction, enjoining Ezriel from violating his non-compete agreements.  Dkt. 156.

---

[2] On April 2, 2014, the Honorable Carolyn E. Demarest, acting in recognition of this Court's decision to exercise jurisdiction, dismissed the Brooklyn Action "without prejudice to a motion to restore should the federal action not resolve all issues."  *Preferred Fragrance, Inc., et al. v. Fragrance Acquisitions, LLC, et al.*, Index No. 505426/2013, (N.Y. Sup. Ct.), Dkt. 67.

### C.  The Instant Motion

On May 30, 2014, plaintiffs moved for leave to amend their Amended Complaint, Dkt. 143, attaching a supporting memorandum of law, Dkt. 144 ("Pl. Br."), a declaration, Dkt. 145 ("Steel Decl."), and a proposed Second Amended Complaint, Steel Decl. Ex. 1 ("proposed SAC" or "PSAC").  In support of their motion, plaintiffs state that "[d]uring expedited discovery, Plaintiffs learned additional facts that provided . . . bases to allege additional claims against Ezriel Polatsek for his involvement in competing enterprises Ouleaf and Exceed, and to assert claims against these competing enterprises as well as against Abraham Polatsek, Qian Liu, and Onlyou."  Pl. Br. 4.  In the proposed SAC, plaintiffs allege, in essence, that Ezriel and the proposed additional defendants devised a scheme to copy the business model of Preferred Fragrance and to sell similar imitation fragrance products to its customers.  *See* PSAC ¶¶ 4, 103. As such, plaintiffs propose 11 new causes of action, including fraud, *id.* ¶¶ 200–06, copyright infringement, *id.* ¶¶ 214–24, trade dress infringement, *id.* ¶¶ 225–40, unfair competition, *id.* ¶¶ 241–44, tortious interference with business relationships, *id.* ¶¶ 245–50, breach of contract, *id.* ¶¶ 251–57, breach of fiduciary duty and aiding and abetting same, *id.* ¶¶ 258–67, unjust enrichment, *id.* ¶¶ 268–71, and civil conspiracy, *id.* ¶¶ 272–75.  They also propose to add five new defendants:  Abraham, Ouleaf, Qian Liu, Onlyou, and Exceed.  *Id.* ¶¶ 17–21.

On June 13, 2014, Preferred Fragrance and Ezriel, Sarah, and Harry Polatsek opposed the motion to amend.[3]  Dkt. 141 ("Def. Br.").  On June 20, 2014, plaintiffs replied.  Dkt. 146 ("Pl. Reply Br.").  With permission from the Court, Dkt. 149, the moving defendants filed a sur-reply on June 27, 2014, Dkt. 154 ("Def. Reply Br.").

---

[3] For ease of reference, in this opinion the Court will refer to these defendants as the "moving defendants."

## II.    Applicable Legal Standards

Federal Rule of Civil Procedure 15 supplies the legal standard applicable to a motion to amend a complaint.  Rule 15(a)(2) provides that leave to amend a complaint shall be "freely" given when "justice so requires."  Fed. R. Civ. P. 15(a)(2).  However, "'it is within the sound discretion of the district court to grant or deny leave to amend.'"  *Barbata v. Latamie*, No. 11 Civ. 7381 (DLC), 2012 WL 1986981, at *2 (S.D.N.Y. June 4, 2012) (quoting *Green v. Mattingly*, 585 F.3d 97, 104 (2d Cir. 2009)).  The Supreme Court has directed courts to grant leave to amend under Rule 15 in the absence of factors "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200–01 (2d Cir. 2007).[4]

A proposed amendment is futile if the amended pleading fails to state a claim upon which relief could be granted, and would thus not survive a motion to dismiss.  *See TouchTunes Music Corp. v. Rowe Int'l Corp.*, 847 F. Supp. 2d 606, 621 (S.D.N.Y. 2012) (citing *Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V.*, 464 F.3d 1339, 1354–55 (Fed. Cir. 2006)).

---

[4] Where the proposed amendment seeks to add parties, Rule 21 governs.  It provides that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party."  Fed. R. Civ. P. 21.  Although Rule 21 on its face might appear to countenance amendments not authorized by Rule 15, the case law dictates that, in determining whether the terms are "just" under Rule 21, courts should "'apply the same standard of liberality afforded to motions to amend pleadings under Rule 15.'"  *Bridgeport Music, Inc. v. Universal Music Grp., Inc.*, 248 F.R.D. 408, 412 (S.D.N.Y. 2008) (quoting *Soler v. G & U, Inc.*, 86 F.R.D. 524, 528 (S.D.N.Y. 1980)).  Here, the PSAC's proposal to add new parties is "just" to the extent that the claims against the new parties are not futile.  Accordingly, as explained *infra*, the Court will allow plaintiffs to add as defendants Abraham, Liu, Ouleaf, and Onlyyou, but not Exceed.

### III.    Discussion

The moving defendants oppose the proposed amendments on the grounds that they are futile and that allowing plaintiffs to amend their complaint would unduly prejudice defendants. Specifically, they argue that (1) the proposed fraud and breach of fiduciary duty claims against Ezriel are duplicative of the proposed claim for breach of contract; (2) the proposed claims for copyright and trade dress infringement are insufficiently pled; (3) the proposed claims for unfair competition, tortious interference, and civil conspiracy are preempted by federal law; and (4) permitting plaintiffs leave to amend and to add parties will further complicate and delay this litigation by introducing unrelated claims requiring additional discovery.

### A.    Futility

#### 1.    Fraud Claim (Count 3)

In Count 3, plaintiffs allege that Ezriel "made misrepresentations to induce Plaintiffs to enter into the Transaction," PSAC ¶ 201, by "represent[ing] that he would abide by the terms of the Restrictive Covenants for the time specified therein," *id.* ¶ 202, when, in fact, he "did not intend to abide by the[ir] terms," *id.* ¶ 203.  The moving defendants contend that this proposed fraud claim is duplicative of plaintiffs' proposed breach of contract claim against Ezriel, Count 10, which the defendants do not challenge.  Accordingly, defendants contend, the proposed fraud claim cannot stand.  Although New York state caselaw relevant to this point is less than uniform, the Court, based on the Second Circuit's reading of this law, holds that defendants are correct.

"The Second Circuit has held that, as a general rule, the allegation that a party entered into a contract intending to breach that contract is insufficient to support a claim for fraud under New York law."  *Marriott Int'l, Inc. v. Downtown Athletic Club of N.Y. City, Inc.*, No. 02 Civ. 3906 (MBM), 2003 WL 21314056, at *6 (S.D.N.Y. June 9, 2003); *see also Manning v. Utils.*

*Mut. Ins. Co.*, 254 F.3d 387, 401 (2d Cir. 2001) (holding that a representation that "is merely a statement of intent to perform under the contract cannot constitute fraud"); *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19–20 (2d Cir. 1996) (dismissing fraud claim where the alleged misrepresentations "amount[ed] to little more than intentionally-false statements . . . indicating [defendant's] intent to perform under the contract").[5] "Thus, courts in this district have consistently dismissed fraud claims predicated on allegations that defendants did not intend to meet their contractual obligations." *Marriott*, 2003 WL 21314056, at *6 (collecting cases).

Here, the proposed SAC alleges only that Ezriel "represented that he would" but "did not intend to abide by" the terms of the Restrictive Covenants when he signed the APA and Employment Agreements. *See* PSAC ¶¶ 202–03; *see also id.* ¶ 101. Furthermore, plaintiffs do not allege facts meeting any exception to the Second Circuit rule. Specifically, the PSAC does not "(i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Bridgestone/Firestone*, 98 F.3d at 20; *see also Marriott*, 2003 WL 21314056, at *6– *7. Under New York law as interpreted by the Second Circuit, plaintiffs' allegations in the

---

[5] As a court in this District explained: "This rule derives from a very long and very puzzling line of New York cases. On at least four occasions, New York's Court of Appeals has expressly held that 'a contractual promise made with the undisclosed intention not to perform it constitutes fraud.' At the same time, however, there are numerous Appellate Division cases that state precisely the opposite rule." *Cougar Audio, Inc. v. Reich*, No. 99 Civ. 4498 (LBS), 2000 WL 420546, at *6 n.4 (S.D.N.Y. Apr. 18, 2000) (quoting *Sabo v. Delman*, 3 N.Y.2d 155, 162 (N.Y. 1957)). "The Second Circuit and courts in this district have resolved the conflict between the state cases by following the Appellate Division's rule and crafting fact-specific exceptions that account for the Court of Appeals' decisions." *Marriott*, 2003 WL 21314056, at *6 n.3.

PSAC are, therefore, insufficient to support a fraud claim. Accordingly, the Court rejects Count 3 of the proposed SAC.

### 2.    Breach of Fiduciary Duty Claims (Counts 11 & 12)

In Count 11, plaintiffs allege that Ezriel breached his fiduciary duties to plaintiffs by "operating or participating in ventures that were directly competing with the Company, misappropriating confidential and proprietary information concerning the Company's Business and customer relationships, . . . and misappropriating corporate opportunities of the Company." PSAC ¶ 259. In Count 12, plaintiffs allege that Abraham, Liu, Exceed, Ouleaf, and Onlyou had knowledge of and assisted in Ezriel's breach of his duties by forming Ouleaf and contributing to its operations. *See id.* ¶¶ 263–67. The moving defendants assert that the proposed claim against Ezriel is also duplicative of plaintiffs' proposed breach of contract claim against him, which, again, they do not challenge. The moving defendants are correct.

"Where a fiduciary duty is based upon a comprehensive written contract between the parties, a claim for breach of fiduciary duty is duplicative of a claim for breach of contract" and must be dismissed. *Alitalia Linee Aeree Italiane, S.p.A. v. Airline Tariff Publ'g Co.*, 580 F. Supp. 2d 285, 294–95 (S.D.N.Y. 2008) (citing *Med. Research Assocs., P.C. v. Medcon Fin. Servs., Inc.*, 253 F. Supp. 2d 643, 649–50 (S.D.N.Y. 2003) and *Brooks v. Key Trust Co. Nat'l Ass'n*, 809 N.Y.S.2d 270, 272 (3d Dep't 2006)); *accord Northern Shipping Funds I, LLC v. Icon Capital Corp.*, 921 F. Supp. 2d 94, 105 (S.D.N.Y. 2013); *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 196 (S.D.N.Y. 2011) ("In New York, a cause of action for breach of fiduciary duty which is merely duplicative of a breach of contract claim cannot stand.") (citation omitted).

Specifically, "[a] breach of fiduciary duty claim is duplicative when it is based on allegations of fiduciary wrongdoing that are expressly raised in plaintiff's breach of contract claim." *Northern Shipping*, 921 F. Supp. 2d at 105 (citation omitted).  The moving defendants contend that the fiduciary duty claim is duplicative because, as in *Northern Shipping*, it is based on allegations expressly made in the proposed breach of contract claim.  In response, plaintiffs argue that the claim is not duplicative because Ezriel's "fiduciary duties arise from his status as an officer, director and LLC member, and thus exist independently of any agreements."  Pl. Reply Br. 8.

Plaintiffs misunderstand the deficiency here.  Regardless of the source or existence of Ezriel's duty, the critical issue is that the proposed "breach of fiduciary duty claim is identical in substance to the breach of contract claim and is therefore duplicative.  Both claims are premised upon the same facts and seek the same damages for the alleged conduct."  *Northern Shipping*, 921 F. Supp. 2d at 106.

In their proposed breach of fiduciary duty claim, plaintiffs allege that Ezriel breached his duties by "operating or participating in ventures that were directly competing with the Company, misappropriating confidential and proprietary information concerning the Company's Business and customer relationships, which he had a duty to keep confidential, and misappropriating corporate opportunities of the Company."  PSAC ¶ 259.  Specifically, plaintiffs point to Ezriel's: (1) "assisting Ouleaf by (at least) introducing it to customers of the Company," (2) "participating in the Wilhemina Venture," (3) "misappropriating, wrongfully disclosing and using for improper purposes the Company's confidential information . . . to enable Ouleaf to compete with and solicit the customers of the Company," and (4) "diverting the opportunity to participate in

the Wilhelmina Venture away from the Company and, instead, in favor of his outside business interest in Exceed." *Id.* ¶ 260.

Each of these allegations—Ezriel's disclosure of confidential information, misappropriation of corporate opportunities, and activities in connection with Ouleaf and Wilhelmina—mirrors those supporting plaintiffs' breach of contract claim. *See id.* ¶¶ 252–57. Indeed, plaintiffs do not allege or point to a single fact supporting the proposed breach of fiduciary duty claim that is not already included in the proposed breach of contract claim. Because the fiduciary duty claim duplicates the breach of contract claim, Count 11 must be dismissed, even if plaintiffs have sufficiently alleged a fiduciary relationship. *E–Global Alliances, LLC v. Anderson*, No. 10 Civ. 2844 (KMK) (PED), 2011 WL 8879268, at *9 (S.D.N.Y. May 11, 2011) (dismissing breach of fiduciary duty claim when based upon same facts and seeking same damages for same alleged conduct as breach of contract claim).

Accordingly, although the parties did not address the issue in their briefs, the Court holds that plaintiffs' claim for aiding and abetting breach of fiduciary duty (Count 12) must also be dismissed, because, under New York law, "'[a] claim for aiding and abetting a breach of fiduciary duty requires . . . a breach by a fiduciary of obligations to another.'" *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 294 (2d Cir. 2006) (quoting *Kaufman v. Cohen*, 760 N.Y.S.2d 157, 169 (1st Dep't 2003)). Plaintiffs here have not alleged any such breach that is independent of the alleged breach of contract. Further, because Count 12 is the only claim which plaintiffs seek to bring against Exceed, plaintiffs' application to add Exceed as a defendant is denied.

**3.      Copyright Infringement Claim (Count 5)**

In Count 5, plaintiffs allege that Ezriel and the proposed new defendants "had access to and copied the Preferred Design Elements present on the fragrance product packaging for [three

of plaintiffs' products]," PSAC ¶ 217, and that Ouleaf "creat[ed] and distribut[ed] the Infringing

Products, which incorporate elements substantially similar to the copyrightable matter in the

Preferred Design Elements," *id.* ¶ 218.  They further allege that Ezriel, Abraham, Liu, and

Onlyou "are contributorily liable for the infringing acts of Ouleaf, as they are moving, active

forces behind the infringement and personally induced, caused and materially contributed to the

infringement." *Id.* ¶¶ 219–20.

"In order to establish a claim of copyright infringement, 'a plaintiff with a valid copyright

must demonstrate that:  (1) the defendant has actually copied the plaintiff's work; and (2) the

copying is illegal because a substantial similarity exists between the defendant's work and the

protectible elements of plaintiff's.'" *Peter F. Gaito Architecture v. Simone Dev.*, 602 F.3d 57, 63

(2d Cir. 2010) (quoting *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 99 (2d Cir. 1999)).  As to the first

element, "[i]n the absence of direct evidence, 'a plaintiff may establish copying circumstantially

by demonstrating that the person who composed the defendant's work had access to the

copyrighted material, and that there are similarities between the two works that are probative of

copying.'" *LaChapelle v. Fenty*, 812 F. Supp. 2d 434, 440 (S.D.N.Y. 2011) (quoting *Jorgensen*

*v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003)).

As a preliminary matter, the Court finds that plaintiffs have adequately pleaded the first

element—copying—circumstantially through their allegations that Ezriel and the proposed new

defendants had access to the copyrighted works and that there are similarities between the works.

*See* PSAC ¶¶ 217–18.  Contrary to defendants' assertions, plaintiffs have also adequately alleged

that Ezriel had knowledge of and contributed to the alleged infringing activity.  *See id.* ¶¶ 101,

103–06, 130, 219.  However, the analysis does not end there.

As to the second element, contrary to plaintiffs' assertions, the Second Circuit has held that:

> The question of substantial similarity is by no means exclusively reserved for resolution by a jury, . . . and we have repeatedly recognized that, in certain circumstances, it is entirely appropriate for a district court to resolve that question as a matter of law, "either because the similarity between two works concerns only noncopyrightable elements of the plaintiff's work, or because no reasonable jury, properly instructed, could find that the two works are substantially similar."

*Gaito Architecture*, 602 F.3d at 63 (quoting *Warner Bros. Inc. v. Am. Broad. Cos.*, 720 F.2d 231, 240 (2d Cir. 1983)). "In copyright infringement actions, the works themselves supersede and control contrary descriptions of them, including any contrary allegations, conclusions or descriptions of the works contained in the pleadings." *Id.* at 64 (citations omitted).

> Thus, where, as here, the works in question are attached to a plaintiff's complaint,[6] it is entirely appropriate for the district court to consider the similarity between those works in connection with a motion to dismiss, because the court has before it all that is necessary in order to make such an evaluation.  If, in making that evaluation, the district court determines that the two works are "not substantially similar as a matter of law," the district court can properly conclude that the plaintiff's complaint, together with the works incorporated therein, do not "plausibly give rise to an entitlement to relief."

*Id.* (citations omitted).   And, "when faced with works 'that have both protectible and unprotectible elements,' our analysis must be 'more discerning,' and . . . we instead 'must attempt to extract the unprotectible elements from our consideration and ask whether the protectible elements, standing alone, are substantially similar.'" *Id.* at 66 (quoting *Fisher–Price, Inc. v. Well–Made Toy Mfg. Corp.*, 25 F.3d 119, 123 (2d Cir. 1994) and *Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996, 1002 (2d Cir. 1995)).  "When similar works resemble each other only in unprotected aspects—for example, when similarities inhere in ideas, which are by definition unprotected, or in expression that is not proprietary to plaintiff—defendant prevails."

---

[6] *See* PSAC Ex. C–H.

*Bill Diodato Photography, LLC v. Kate Spade, LLC*, 388 F. Supp. 2d 382, 390 (S.D.N.Y. 2005). At the same time, courts are not "required to dissect the works into their separate components, and compare only those elements which are in themselves copyrightable," but rather "are principally guided by comparing the contested design's total concept and overall feel with that of the allegedly infringed work, as instructed by our good eyes and common sense." *Gaito Architecture*, 602 F.3d at 66 (citations omitted). "This is so because the defendant may infringe on the plaintiff's work not only through literal copying of a portion of it, but also by parroting properties that are apparent only when numerous aesthetic decisions embodied in the plaintiff's work of art—the excerpting, modifying, and arranging of unprotectible components—are considered in relation to one another." *Id.* (citations omitted). "Thus, in the end, our inquiry necessarily focuses on whether the alleged infringer has misappropriated the original way in which the author has selected, coordinated, and arranged the elements of his or her work." *Id.* (citations omitted).

In light of these standards, the Court must consider whether (1) the similarity between the two works concerns only noncopyrightable elements of the plaintiffs' work, and (2) no reasonable jury, properly instructed, could find that the two works are substantially similar.

Here, plaintiffs allege that they hold "valid copyrights registered with the Copyright Office for the artwork and graphic designs on the packaging of" three fragrance products. PSAC ¶ 119. A plain comparison of the products, however, reveals that their similarities concern only noncopyrightable elements—such as using a red, orange, and yellow color scheme to evoke heat, or the idea of including a ribbon on a gift box—and not the actual artwork and graphic designs. These color-scheme similarities are unsurprising, given that plaintiffs' and defendants' designs both seek to mimic the packaging of three designer fragrance products offered by non-party

entities: "Beyonce Heat," *id.* ¶ 123, "Viva La Juicy," *id.* ¶ 124, and "Snooki by Nicole Polizzi," *id.* ¶ 125.

Plaintiffs' version of the first product, an imitation "Beyonce Heat" fragrance box set, entitled "Hottest," features a solid pink lid embossed with floral designs, with the image of a flame along the top right side extending onto the side of the box; inside, the plastic liner is also printed with a translucent flame image, and the red bottles feature gold caps and floral designs. *See* PSAC Ex. C. In contrast, Ouleaf's version, entitled "Beyond Hot," features a lid printed with an image of orange and yellow clouds; inside, the plastic liner is clear over a red background and the bottles are solid red, with no designs or gold lids. *See* PSAC Ex. F. Strikingly, Ouleaf's version does not contain any flame or floral design elements whatsoever, and the labels are printed in noticeably different fonts. Clearly, both products are intended to evoke "heat," and do so through the use of a red and orange color scheme. However, the idea of expressing heat through such colors is not protectible, and Ouleaf's packaging does not employ any of plaintiffs' flame or floral designs.

Plaintiffs' version of the second product, an imitation "Viva La Juicy" fragrance box set, entitled "La Vida Loca," features a solid pink lid with gold floral designs along the top and gold stars bordering the sides and bottom; inside, the plastic liner is clear over a gold background, two of the bottles are clear with white floral designs, and one bottle is pink with gold stars. *See* PSAC Ex. D. Ouleaf's version, entitled "Lucy, the Diva," also features a solid pink lid, but with a solid gold line surrounding the rim, small abstract designs in the corners, and an embellished heart insignia; inside, the plastic liner is clear over a bright pink background and the bottles are bright pink with silver lettering. *See* PSAC Ex. G. As with the first product, these are also printed with markedly different fonts, and Ouleaf's does not use gold stars anywhere or employ

the same floral designs as plaintiffs.  Here, both parties use similar pink and gold color schemes to evoke femininity, luxury, and glamor but, again, that idea is neither original nor protectible, and Ouleaf's packaging does not employ plaintiffs' floral or star designs.

Plaintiffs' version of the third product, an imitation "Snooki by Nicole Polizzi" fragrance box set, entitled "Sexy Babe," features a pink and black zebra-print lid with an image of red puckered lips; inside, the plastic liner is clear over a silver background and the bottles are printed with blue, purple, and pink zebra stripes and the same puckered lip design.  *See* PSAC Ex. E.  In contrast, Ouleaf's version, entitled "Sexies Only," features a pink and black leopard-print lid, with no other images or designs; inside, the plastic liner is clear over a pink background, and the bottles are printed with pink and black leopard spots, with one featuring a photograph of a woman's face.  *See* PSAC Ex. H.  Again, each version uses a different font.  As with the other two products, both parties use the color pink and animal prints to evoke "sexiness" but, again, that idea is hardly original.  Here, not only does Ouleaf employ an entirely different animal print, it also does not use plaintiffs' kissing-lips design.

Ultimately, plaintiffs seem to take issue with defendants' mimicking of their practice of creating "impression of" fragrance products.  However, the strategy of "knocking off" or imitating successful branded products is neither unique to plaintiffs nor protectible.  Plaintiffs have no proprietary interest in the packaging designs of successful designer fragrance products marketed by others:  Plaintiffs have no greater right to mimic a designer fragrance than do defendants; nor do plaintiffs have the right to exclude others from seeking to do so.  Critically, plaintiffs do not allege that defendants copied their particular copyrighted artwork or graphic designs—such as the flame or lips images.  Rather, plaintiffs allege that defendants developed similar competing products, using everyday ideas like wrapping a gift box with a bow or evoking

heat through the color red.  The similarities on which plaintiffs' claim is based implicate only

non-copyrightable elements.  And no reasonable jury, properly instructed, could find the element

of substantial similarity.  Accordingly, plaintiffs fail to "state a claim to relief that is plausible on

its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### 4.        Trade Dress Infringement Claims (Counts 6 & 7)

The proposed SAC includes two trade dress claims.  Count 6 alleges that defendants have

designed and sold "products that contain a collection of design elements that is confusingly

similar to the Preferred Trade Dress" in violation of the Lanham Act, 15 U.S.C. § 1125(a).

PSAC ¶ 227.  Count 7 alleges that defendants have committed common law trade dress

infringement.  *Id.* ¶¶ 236–40.

"The analysis for trade dress infringement is the same under both the Lanham Act and

New York State common law."  *Sports Traveler, Inc. v. Advance Magazine Publishers, Inc.*, 25

F. Supp. 2d 154, 166 (S.D.N.Y. 1998); *accord Eyal R.D. Corp. v. Jewelex New York Ltd.*, 784 F.

Supp. 2d 441, 448 n.2 (S.D.N.Y. 2011); *U-Neek, Inc. v. Wal-Mart Stores, Inc.*, 147 F. Supp. 2d

158, 178 (S.D.N.Y. 2001);

Because plaintiffs do not have a relevant registered trademark, they are "proceeding

under § 43(a) of the Lanham Act, which prohibits a person from using 'any word, term, name,

symbol, or device, or any combination thereof' that is 'likely to cause confusion . . . as to the

origin, sponsorship, or approval of his or her goods.'"  *Yurman Design, Inc. v. PAJ, Inc.*, 262

F.3d 101, 114 (2d Cir. 2001) (quoting 15 U.S.C. § 1125(a)).  "Although § 43 proscribes 'a

broader range of practices' than does the cause of action for infringement of registered marks,

'the general principles qualifying a mark for registration under § 2 of the Lanham Act are for the

most part applicable in determining whether an unregistered mark is entitled to protection under

§ 43(a).'" *Id.* (quoting *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992)).

"Accordingly, both § 2 and § 43(a) have been construed to embrace not just source-identifying 'word marks, such as 'Nike,' and symbol marks, such as Nike's 'swoosh' symbol, but also 'trade dress.''" *Id.* (quoting *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 209 (2000)). Trade dress includes "'the packaging, or 'dressing,' of a product.'" *Id.* (quoting *Samara Bros.*, 529 U.S. at 209).

"In any action under § 43(a), the plaintiff must prove (1) that the mark is distinctive as to the source of the good, and (2) that there is a likelihood of confusion between its good and the defendant's." *Id.* at 115 (citing *Samara Bros.*, 529 U.S. at 210).

> Where the mark is a word, symbol or even product packaging, the plaintiff may prove distinctiveness by showing *either* that the "intrinsic nature" of the mark serves to identify a particular source (what is known as "inherent distinctiveness") *or* that "in the minds of the public, the primary significance of [the mark] is to identify the source of the product rather than the product itself" (what is known as "acquired distinctiveness" or "secondary meaning").

*Id.* (quoting *Samara Bros.*, 529 U.S. at 210–11). That is because "the purpose of trade dress law" is "to protect an owner of a dress in informing the public of the source of its products, without permitting the owner to exclude competition from functionally similar products." *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 33 (2d Cir. 1995).

Plaintiffs' problem is simple: they have not alleged, and logically cannot allege, that their products involve a "mark [that] is distinctive as to the source of the good." *Yurman Design*, 262 F.3d at 115. That is because plaintiffs themselves are in the business of designing and selling perfumes that, by their own admission, are "impressions of" other perfumes. *See, e.g.*, PSAC ¶ 110 ("As part of its Business, the Company identifies successful fragrance brands and packaging on the market and then uses its own creativity to develop an 'impression of' that fragrance . . . [resulting in] a unique overall look for each product."). Plaintiffs have not alleged

that there is any commonality to their mode of making imitation perfumes; rather, they seek to mimic the perfumes of multiple, and diverse, brands. *See id.* ¶¶ 123–25. They have not alleged, with any particularity, that their imitations alter the original in a common or distinctive manner. *See id.* ¶ 110 (alleging only that, "[m]arketed together to retailers and consumers as a group of products from Preferred Fragrance, this line represents a recognized family of uniquely packaged and high quality 'impression of' products, so that the trade dress of the packaging of Preferred Fragrance's line of products serves to identify Preferred Fragrance's products and distinguish them from the products provided by others"); *id.* ¶ 112 ("The Company's products that are impressions of existing products are clearly labeled to be 'impression of' another brand to avoid any confusion with the original and are further labeled to identify Preferred Fragrance as the source having no connection to the producer of the original branded product.").

In sum, the proposed SAC does not identify what plaintiffs' trade dress supposedly *is*, other than the concept of imitating others' perfume and, perhaps, the addition in some instances of a tag reading "our impression of" and, perhaps, the words "Preferred Fragrance."[7]  *See* PSAC Ex. C–E (images of three of plaintiffs' products, on none of which can be discerned the words "Preferred Fragrance" or any common mark).  Indeed, as noted, plaintiffs overtly eschew the notion of *having* a distinctive source; their business model consists of echoing *other* companies' perfume products.  The proposed SAC therefore fails to allege a protected trade dress of plaintiffs. *See Yurman Design*, 262 F.3d at 116 ("[A] plaintiff seeking to protect its trade dress

---

[7] Despite plaintiffs' assertions that their products are "labeled to identify Preferred Fragrance as the source," PSAC ¶ 112, the Court does not observe where, if at all, the trade name "Preferred Fragrance" is indicated on the packaging of any of the three products at issue here.  Given this apparent lack of clear branding, and the admitted lack of any other consistent elements across plaintiffs' products, it is hard to see how any consumer could possibly discern the source of these goods based on the packaging alone.

in a line of products must articulate the design elements that compose the trade dress."); *id.* at 115 (trade dress does not "protect product designs that are overbroad or generic—those that refer to the genus of which the particular product is a species") (citation omitted).

### 5. Unfair Competition, Tortious Interference, and Civil Conspiracy Claims (Counts 8, 9, & 14)

Finally, the moving defendants argue that plaintiffs' claims for unfair competition, tortious interference, and civil conspiracy are preempted by federal law because they are merely duplicative of plaintiffs' Copyright Act claims. The Court holds that these claims are deficient, but for other reasons.

"'The essence of unfair competition under New York common law is the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of the goods.'" *Enzo Biochem, Inc. v. Amersham PLC*, 981 F. Supp. 2d 217, 226 (S.D.N.Y. 2013) (quoting *Jeffrey Milstein*, 58 F.3d at 34). The unfair competition claim here, however, fails because the proposed SAC does not adequately allege that consumers are likely to be confused as to the origin of plaintiffs' goods.[8]

---

[8] Contrary to the moving defendants' argument, the unfair competition claim is not, in fact, preempted. Although "unfair competition and misappropriation claims grounded *solely* in the copying of a plaintiff's protected expression are preempted by the Copyright Act," *LaChapelle*, 812 F. Supp. 2d at 444 (internal quotation marks and brackets omitted), the Second Circuit has held that "'intentional deception' constitutes an extra element not required in a copyright infringement claim" and therefore "passing off" claims are not preempted, *Samara Bros., Inc. v. Wal-Mart Stores, Inc.*, 165 F.3d 120, 131 (2d Cir. 1998) *rev'd on other grounds*, 529 U.S. 205, (2000); *see also Colour & Design v. U.S. Vinyl Mfg. Corp.*, No. 04 Civ. 8332 (MBM), 2005 WL 1337864, at *6 (S.D.N.Y. June 3, 2005) ("[S]tate law unfair competition claims that allege the tort of 'passing off' one's goods as those of another or creating confusion as to the source of goods are not preempted because they do not entail the assertion of rights equivalent to those protected by federal copyright law."). Here, the proposed SAC alleges that (1) Ezriel and the proposed new defendants have "misappropriated to themselves the benefits of Plaintiffs' work, labor, intellectual property, and investment," PSAC ¶ 242; (2) that such actions "are likely to cause confusion . . . and to create in the mind of the public the false impression that the Company is responsible for or affiliated with Ouleaf and the products it provides," *id.* ¶ 243; and (3) that

Under New York law, the elements of a claim for tortious interference with business relations are:  that "(i) the plaintiff had business relations with a third party; (ii) the defendants interfered with those business relations; (iii) the defendants acted for a wrongful purpose or used dishonest, unfair, or improper means; and (iv) the defendants' acts injured the relationship." *Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 214 (2d Cir. 2002).  The Court finds, and the moving defendants do not contest, that the proposed SAC alleges facts sufficient to establish elements one, two, and four.  As to the third element, improper means, the proposed SAC alleges that Ezriel and the proposed new defendants "engaged in copyright infringement, trade dress infringement and unfair competition in misappropriating the designs of the Company's products and selling Ouleaf's products to the customers of the Company."  PSAC ¶ 248.  However, for the reasons reviewed earlier, the proposed SAC fails adequately to allege any of these three predicates.  It therefore fails adequately to allege improper means.

Finally, "[u]nder New York law, a claim for civil conspiracy may stand only if it is connected to a separate underlying tort."  *Meisel v. Grunberg*, 651 F. Supp. 2d 98, 119 (S.D.N.Y. 2009).  To state a claim for civil conspiracy, a plaintiff must "demonstrate the primary tort, plus the following four elements:  (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury."  *World Wrestling Fed'n Entm't, Inc. v. Bozell*, 142 F. Supp. 2d 514, 532 (S.D.N.Y. 2001); *see also Meisel*, 651 F. Supp. 2d at 119.  Once again,

---

these actions "were committed intentionally, willfully and in bad faith," *id.* ¶ 244.  This claim is, on its face, not grounded solely in the copying of plaintiffs' protected expressions; it contains the "extra element" of intentional deception.  Accordingly, plaintiffs' unfair competition claim is not preempted.

the proposed SAC does not sufficiently plead an underlying primary tort, and it therefore fails to state a claim for civil conspiracy.

### 6.    Unjust Enrichment Claim (Count 13)

In Count 13, plaintiffs allege that proposed new defendants Abraham, Liu, Ouleaf, and Onlyou "were unjustly enriched at the expense of the Plaintiffs, in that they received profits from engaging in unfair competition and selling products that infringed on the Preferred Trade Dress and Preferred Design Elements," PSAC ¶ 269, and that "[i]t is against equity and good conscience to permit Defendants Ouleaf, Onlyou, Liu, and Abraham Polatsek to retain these profits" since "Plaintiffs had a relationship of trust with these Defendants," *id.* ¶ 270.  The moving defendants do not allege futility as to this claim, because it does not concern them, but only new defendants.  Once formally added to the case, those defendants will have an opportunity to answer or move to dismiss this claim.

### 7.    Breach of Contract Claim Against Ezriel (Count 10)

In the Amended Complaint, plaintiffs brought a cause of action for breach of contract against the "APA Defendants," *i.e.*, the individual stockholders of Preferred Fragrance who signed the APA, including Ezriel, alleging that they breached certain representations and warranties in the APA by making certain omissions and during the sale of Preferred Fragrance. Dkt. 32 ¶¶ 140–46 (Count 3).  In the Amended Complaint, that cause of action was denominated Count 3.

The proposed SAC retains Count 3, while renumbering it as Count 4, and asserts a new cause of action for breach of contract.  Specifically, Count 10 alleges that Ezriel, by working with Ouleaf, Exceed, and on a venture with Wilhelmina, a modeling company, breached his non-compete agreements, as well as his contractual duties to devote substantially all of his time

Fragrance Acquisitions while employed there and to not disparage Fragrance Acquisitions or disclose its confidential information.  *See* PSAC ¶¶ 251–257.  The non-compete allegations are based heavily on evidence that the Court received in connection with plaintiffs' motion for a preliminary injunction against Ezriel.

Wisely, defendants do not argue that it would be futile to amend the operative complaint to add Count 10.  Accordingly, the Court will allow the addition of Count 10.

### 8.      Overview of Holdings as to Futility

In sum, the Court holds that it would be futile to grant plaintiffs leave to add the claims discussed *supra*, Section III.A.1–5, *i.e.*, those for fraud (Count 3), copyright infringement (Count 5), trade dress infringement (Counts 6 and 7), unfair competition (Count 8), tortious interference (Count 9), breach of fiduciary duty (Count 11), aiding and abetting breach of fiduciary duty (Count 12), and civil conspiracy (Count 14).

### B.      Undue Prejudice to the Opposing Party

The moving defendants also argue that permitting plaintiffs leave to amend will result in unfair prejudice because the proposed new claims largely do not involve the existing defendants, *see* Def. Br. 5, and will materially add to the complexity and costs of discovery, *see* Def. Reply Br. 8.  These arguments were made, however, in response to the prospect of adding all of the proposed new claims.  In light of this Court's foregoing rulings, the only new claims that survive are the new breach of contract claim against Ezriel (Count 10) and the unjust enrichment claim against four proposed new defendants (Count 13).

In this Circuit, an "[a]mendment may be prejudicial when . . . it would 'require the opponent to expend significant additional resources to conduct discovery and prepare for trial' or 'significantly delay the resolution of the dispute.'"  *AEP Energy Servs. Gas Holding Co. v. Bank*

*of Am., N.A.*, 626 F.3d 699, 725–26 (2d Cir. 2010) (quoting *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981)); *see also Monahan v. New York City Dep't of Corrs.*, 214 F.3d 275, 284 (2d Cir. 2000) (reciting same definition of what constitutes "prejudice"); *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993).

Allowing plaintiffs leave to add Counts 10 and 13 would impose little additional burden on defendants.  Count 13, the unjust enrichment claim, is only brought against four of the proposed new defendants:  Ouleaf, Onlyyou, Abraham, and Liu.  Adding this claim will not substantially burden the current defendants.  As plaintiffs point out, "the current Defendants who are not implicated in Ezriel's breaches of the Restrictive Covenants have already demonstrated a practical approach to dealing with [those] claims [that do not implicate them]: they have simply not attended depositions or hearings relating to those claims."  Pl. Reply. Br. 10.  As such, there is little reason why the addition of one claim that does not implicate those defendants would significantly burden them.

As to Ezriel, the proposed new breach of contract claim, Count 10, will not substantially prejudice him.  It arises out of conduct during the same period during the same period as the original claims, and this conduct is related to the conduct relevant to those claims.  *See State Teachers*, 654 F.2d at 856 ("The amended claim was obviously one of the objects of discovery and related closely to the original claim.").  As plaintiffs persuasively argue, "there has been, and will be, discovery concerning Ezriel's breach of the Restrictive Covenants, including: how he breached, the extent of his breaches, who he breached with, and the damages flowing from his breach."  Pl. Reply Br. 10.  And discovery in this case is not scheduled to be completed until September 10, 2014, *see* Dkt. 118; Ezriel has not argued that the opportunity to depose him has passed.  The new claim is also closely related to plaintiffs' existing claim for injunctive relief to

prevent Ezriel from violating his non-compete agreements; some discovery as to this claim was already taken in connection with plaintiffs' successful application for a preliminary injunction against Ezriel.  Notably, Ezriel has not identified any concrete inconvenience of difficulty presented by adding the new proposed new breach of contract claim, beyond the prospect of modest additional discovery.

Finally, although plaintiffs' amendment may result in some minor delay, it will not unduly prejudice the current defendants.  "This is not a case where the amendment came on the eve of trial and would result in new problems of proof."  *State Teachers*, 654 F.2d at 856.  No trial date has been set, no motion for summary judgment has been filed by defendants, and discovery is not scheduled to be completed for several months.  *See* Dkt. 118.  Accordingly, the Court finds that the additional resources that Ezriel may have to expend as a result of the addition of Counts 10 and 13 do not justify denying leave to amend on grounds of prejudice.[9] *See Duling v. Gristede's Operating Corp.*, 265 F.R.D. 91, 101 (S.D.N.Y. 2010).

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for leave to amend the Amended Complaint is, for the most part, denied.  In particular, the Court denies plaintiffs' application to add the following counts: fraud (Count 3), copyright (Count 5), trade dress (Counts 6 and 7), unfair competition (Count 8), tortious interference (Count 9), breach of fiduciary duty (Count 11),

---

[9] The moving defendants also accuse plaintiffs of "opportune timing," Def. Reply Br. 10, asserting that seeking leave to amend while their motion for a preliminary injunction was pending is "clear evidence of bad faith," Def. Br. 2; *see also id.* at 5.  The moving defendants do not, however, explain why this timing is suggestive of bad faith.  Quite the contrary, the instant motion to enlarge plaintiffs' claims was indisputably prompted by evidence first obtained during expedited discovery.  Further, as plaintiffs point out, their timing was dictated by the Court's May 13, 2014 scheduling order, which required that any motion to amend or to join parties be filed within 45 days.  Dkt. 118; *see* Pl. Reply Br. 10.  On the record at hand, there is no basis to accuse plaintiffs of acting with bad faith or dilatory motives.

aiding and abetting breach of fiduciary duty (Count 12), and civil conspiracy (Count 14).  The Court also denies plaintiffs' application to add Exceed as a defendant.  Plaintiffs may add Count 10, for breach of contract against Ezriel; Count 13, for unjust enrichment, against Abraham, Ouleaf, Qian Liu, and Onlyou; and they may amend their factual allegations as proposed.  Plaintiffs are directed to file a Second Amended Complaint consistent with this decision by Wednesday, July 23, 2014, and to serve it forthwith on all defendants.  At the time plaintiffs serve the Second Amended Complaint on the new defendants, they shall also serve them with this order; the scheduling order issued by the Court on July 18, 2014; and a cover letter specifically directing the new defendants' attention to this concluding section, which discusses next steps in this case.

As to next steps, the Court notes that, on Friday, July 18, 2014, Ezriel moved under Federal Rule of Civil Procedure 60(b), to be relieved of the preliminary injunction against him.  Dkt. 158–60; *see also* Dkt. 156 (preliminary injunction order).  Despite earlier acknowledging the facial adequacy of the Amended Complaint, Ezriel now argues that this Court lacks jurisdiction over this case because the sole federal claim, brought under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder, fails to state a claim.  Ezriel also states that, within a week, defendants intend to move to dismiss the Amended Complaint on the same grounds.

On July 18, 2014, this Court issued an order scheduling expedited briefing on Ezriel's Rule 60(b) motion and the existing defendants' anticipated motion to dismiss, both based on the same claim that plaintiffs' sole federal claim is facially deficient.  Dkt. 161.  Defendants are to file any motion to dismiss the Amended Complaint on jurisdictional grounds by Thursday, July 24, 2014; plaintiffs are to file a single opposition to the Rule 60(b) and the motion to dismiss by

Wednesday, July 30, 2014; and defendants are to file a reply in support of the Rule 60(b) motion and the motion to dismiss by Monday, August 4, 2014. *Id.* The Court anticipates resolving these motions promptly.

If the Court grants these motions, it will then direct the parties promptly to brief whether the Court should exercise supplemental jurisdiction over the remaining claims.

If the Court denies these motions and determines that it does have jurisdiction, it will then direct the parties, by a date it will specify at that time, to meet and confer promptly and to submit (1) a joint letter setting forth a proposed schedule for the remainder of discovery and for the filing and briefing of any motions by the new defendants to dismiss the Second Amended Complaint; (2) a revised proposed case management plan; and (3) a statement of whether the parties believe that an initial pretrial conference, this time involving the new defendants, would be productive.

In the interest of economy, the Court extends indefinitely the new defendants' obligation to answer or move to dismiss the Second Amended Complaint. Upon resolving the existing defendants' challenge to the sole federal claim, the Court will set a deadline for such responsive pleadings; the Court expects this deadline will be due 14 days after the issuance of an order by the Court resolving the existing defendants' motions challenging the sole federal claim.


SO ORDERED.

*Paul A. Engelmayer*

Paul A. Engelmayer
United States District Judge


Dated: July 21, 2014
New York, New York