UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/8/2014
```

UNI-WORLD CAPITAL L.P., UNI-WORLD CAPITAL
AIV, L.P, FRAGRANCE HOLDINGS, LLC and
FRAGRANCE ACQUISITIONS, LLC,

                                        Plaintiffs,

                    -v-

PREFERRED FRAGRANCE, INC., HARRY
POLATSEK, EZRIEL POLATSEK, SARAH
POLATSEK, SOLOMON TYRNAUER,
BENT PHILIPSON, BENJAMIN LANDA,
and JOSEPH RUBINSTEIN,

                                        Defendants.

------------------------------------------------------------------X

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

13 Civ. 7204 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

This lawsuit, presently in discovery, involves claims arising out of plaintiffs' acquisition

of an imitation-fragrance business. Plaintiffs claim, *inter alia*, that they purchased that business

based on fraudulent misrepresentations by defendants, in violation of § 10(b) of the Securities

Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and the Securities and

Exchange Commission's implementing rule, 17 C.F.R. § 240.10b-5 ("Rule 10b-5"). Pending

before the Court now is a late-made motion by defendants to dismiss the Rule 10b-5 claim, the

only federal claim in the case; such a dismissal would deprive this Court of jurisdiction over this

case unless the Court were to exercise supplementary jurisdiction over the remaining state law

claims. Also pending is a motion by one defendant, Ezriel Polatsek ("Ezriel"),[1] for relief from

---

[1] For the sake of clarity, because there are multiple Polatseks involved in this case, the Court
refers to each Polatsek by first name.

the Court's order enjoining him from competing with plaintiffs; that motion turns on the same legal question as the motion to dismiss, *i.e.*, whether the 10b-5 claim states a claim such that this Court has subject-matter jurisdiction over this case.  For the reasons that follow, defendants' motions are denied.

## I.  Background

The Court assumes familiarity with the facts of this case, including specifically those set out in the Court's three previous written decisions, issued on March 6, 2014, *see* Dkt. 58; July 10, 2014, *see* Dkt. 156; and July 21, 2014, *see* Dkt. 166.  The Court here sets forth only those facts most germane to this opinion.

### A.  Facts Alleged in the FAC[2]

Preferred Fragrance, Inc. ("Preferred Fragrance") was founded in 2000.  FAC ¶ 19. Preferred Fragrance is in the business of selling "designer-inspired fragrance products," *i.e.*, imitation fragrances, to retail chain stores such as Family Dollar and CVS.  *Id.*  As of 2010, Ezriel was CEO and Harry Polatsek ("Harry") CFO of Preferred Fragrance.  *Id.*

In late 2010, an investment bank representing Preferred Fragrance introduced it to Uni-World Capital, L.P. and Uni-World Capital AIV, L.P. (collectively, "Uni-World").  *Id.*  During 2011, Uni-World investigated and negotiated with Preferred Fragrance.  *Id.* ¶¶ 20–26.  In anticipation of purchasing Preferred Fragrance, Uni-World created two entities:  Fragrance Acquisitions, LLC ("Fragrance Acquisitions" or "Acquisitions"), which would take over

---

[2] For the purpose of resolving the motion to dismiss, the Court assumes all facts pled in the First Amended Complaint, Dkt. 32 ("FAC") to be true, drawing all reasonable inferences in favor of the plaintiff.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

Preferred Fragrance's operations, and Fragrance Holdings, LLC ("Fragrance Holdings" or "Holdings"), Fragrance Acquisitions' parent (together, the "Fragrance Entities").  *Id.* ¶ 27.

On October 12, 2011, Fragrance Acquisitions purchased the assets and business of Preferred Fragrance (the "Transaction") pursuant to an Asset Purchase Agreement, *see* FAC Ex. A ("APA"), with Preferred Fragrance and its stockholders (collectively, the "APA Defendants").[3]  *Id.* ¶ 28.  Fragrance Acquisitions paid $24.5 million for the assets and business of Preferred Fragrance, *id.* ¶ 25, broken down as follows:

> The total consideration for the purchase of the Assets and the Business as described herein (the "Total Consideration") shall be (a) an amount of cash equal to $16,837,000 (as adjusted in accordance with Section 2.4) plus (b) units of membership interest in the Parent [*i.e.*, Fragrance Holdings] (the "Parent Units") representing 18.16% of the outstanding voter equity of Parent as of the Closing (the "Rollover Units"), plus (c) the assumption of the Assumed Liabilities.

APA § 2.2 (emphases omitted).  The Amended Complaint further alleges:

> A significant portion of the cash consideration paid by the Company [Fragrance Acquisitions] originated from Uni-World.  As part of the Transaction, Uni-World paid $10.7 million in exchange for 81% of equity in Holdings.  Holdings transferred $10.7 million to [Fragrance Acquisitions] in exchange for 81.64% of [Fragrance Acquisitions'] equity.

FAC ¶ 31 (citing APA § 3.2(q)).

The total purchase price of $24.5 million was based on the parties' determination of the value of Preferred Fragrance, as measured by its earnings before interest, taxes, depreciation, and amortization ("EBITDA").  FAC ¶¶ 4, 25.  To calculate Preferred Fragrance's EBITDA, Uni-World examined data and information provided by defendants, including Preferred Fragrance's financial statements, sales to key customers, and amounts paid to key suppliers.  *Id.* ¶¶ 22–24.

---

[3] The stockholders are Ezriel, Sara Polatsek, Solomon Tyrnauer, Bent Philipson, Joseph Rubenstein, and Benjamin Landa.  The only defendant who was not a party to the APA is Harry.  *See* FAC at 1 (introductory paragraph).

After lengthy discussion and analysis, the parties concluded that Preferred Fragrance's EBITDA, appropriately adjusted to reflect its sustainable cash flow, was $4.033 million. *Id.* ¶ 24. The purchase price of $24.5 million was obtained by multiplying the adjusted EBITDA by a multiplier of 6.075, which in turn was "derived from financial analysis of comparable companies as well as financial and operational information provided by [Preferred Fragrance]." *Id.* ¶ 25 n.1.

During these negotiations, the APA Defendants represented to the buyers that, between March 31, 2011 and October 12, 2011, none of the top 10 customers or suppliers of Preferred Fragrance had "materially reduced or changed the pricing, volume, timing or other terms of its business with the Companies" or had "notified the Companies that it intends to . . . materially reduce or change" such terms. APA § 4.22(b); *see* FAC ¶¶ 32–34. The FAC alleges, however, that contrary to these representations, Harry and Ezriel had secretly agreed to materially change the terms of Preferred Fragrance's arrangements with some of its largest customers and suppliers. FAC ¶ 39. In particular, it alleges that Preferred Fragrance had (1) given its third largest customer, Rainbow, a 12% reduction in price beginning August 2011, *id.* ¶¶ 42–47; (2) given its eighth largest customer, Variety, a 15% reduction in price beginning May 2011, *id.* ¶¶ 48–53; (3) given its second-largest customer, Dollar General, a 3.73% sales discount beginning June 2011, *id.* ¶¶ 60–68; and (4) agreed to 2% price increases with two primary suppliers, Yiwu and Only, *id.* ¶¶ 54–59. These changes, if known, would have lowered the EBITDA from $4 million to $3.1 million. *Id.* ¶ 39. The FAC also alleges that, in 2010, Preferred Fragrance "shipped approximately 300 containers that were inappropriately classified as non-hazardous material, when they should have been classified as hazardous material, which incurs a significantly higher transport cost." *Id.* ¶ 69.

4

Relevant to other aspects of this litigation, but not the instant motions, Ezriel also entered into an employment agreement, by which he became Fragrance Acquisitions' president and chief operating officer (COO), and signed two non-compete agreements, one in the APA and one in the employment agreement. *Id.* ¶¶ 38, 79, 85; *id.* Ex. B.  The FAC alleges that, during his time as president and COO, Ezriel twice converted funds belonging to the company and otherwise breached his duties as COO.  FAC ¶¶ 86–110.  Fragrance Acquisitions terminated Ezriel's employment effective October 10, 2013.  *Id.* ¶ 118.

### B.  Procedural Background

#### 1.  The State Litigation and the Original Motions to Stay or Dismiss

On April 8, 2013, the Fragrance Acquisitions sent the APA Defendants a letter stating that it would seek indemnification for lost profits against them under the APA as a result of their alleged omissions in connection with Preferred Fragrance's sale.  *Id.* ¶¶ 111–12.  Fragrance Acquisitions and defendants then had multiple settlement discussions.  *Id.* ¶ 114.  On or around September 10, 2013, after these discussions reached an impasse, counsel for Fragrance Acquisitions told defendants' counsel that the Fragrance Entities would be "moving toward litigation."  *Id.*

On September 13, 2013, however, before such litigation was filed, Preferred Fragrance and Ezriel filed an anticipatory action in New York Supreme Court in Kings County, seeking declaratory judgments:  that (1) they had not breached the APA and thus were not obliged to indemnify the Fragrance Entities for lost profits, and (2) Ezriel's non-compete agreements were void and unenforceable.  *Preferred Fragrance, Inc., et al. v. Fragrance Acquisitions, LLC, et al.*, Index No. 505426/2013 (N.Y. Sup. Ct. filed Sept. 13, 2013) (the "Brooklyn Action"); FAC ¶¶ 116–17.

On October 10, 2013, Fragrance Acquisitions terminated Ezriel's employment, stating that the termination was for cause pursuant to the employment agreement.  FAC ¶ 118.

On October 11, 2013, plaintiffs filed the original Complaint in this action.  Dkt. 1.  It alleged one claim under federal law, specifically, a violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 (the "10b-5 claim").  It also brought state-law claims for common law fraud and breach of contract; sought declaratory judgments that the termination of Ezriel's employment had been for cause and that the non-complete clause is valid and enforceable; and sought attorneys' fees.  *Id.*

On October 25, 2013, the Fragrance Entities moved, in State Supreme Court, before the Hon. Carolyn E. Demarest, to dismiss or stay the Brooklyn Action in favor of this one.  *See* Dkt. 43 at 7.  On December 17, 2013, defendants here moved to stay or dismiss this action in favor of the Brooklyn Action, Dkt. 23, 27, arguing that this Court should abstain from hearing this case under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976).  Defendants also argued that plaintiffs' sole federal claim, under Rule 10b-5, was deficiently pled, because it did not allege that defendants "used the mails or other instrumentalities of interstate commerce to commit the alleged fraud."  Dkt. 24 at 21.

On January 7, 2014, plaintiffs filed the FAC, which attempted to cure the asserted defect in the 10b-5 claim.  *See* FAC ¶ 130.  On January 24, 2014, the defendants here again moved to stay or dismiss this action, in favor of the Brooklyn Action, under *Colorado River*.  Dkt. 34–39.  Significant here, this time, however, defendants did not move to dismiss the 10b-5 claim, or assert that that claim was improperly pled.  *See id.* (defendants' moving papers).  The parties briefed the issue, *see* Dkt. 43–44, 47–48, and on February 26, 2014, the Court heard argument, Dkt. 56 ("February 26, 2014 Tr.").

At argument, counsel for Preferred Fragrance and the Polatsek defendants acknowledged that they no longer contended that plaintiffs' 10b-5 claim fails to state a claim, although they still contended that the evidence developed in discovery would ultimately not substantiate that claim factually.  The Court, in fact, focused defense counsel on the facial validity of that claim:

> THE COURT:  Let me start you off with this question, which may or may not short-circuit a lot of this discussion.  Assuming the case were to stay here, would it be your intention to move to dismiss the securities fraud count, the 10b-5 count?  Is there a motion to dismiss coming?
>
> MR. SOTTILE:  Your Honor, we do not anticipate an early motion to dismiss the securities count, 10b-5 claim.  I do anticipate that we may end up developing evidence that would allow us to present a dispositive motion, but I do not expect an early process.
>
> THE COURT:  Let me frame it this way.  You are not claiming that the securities fraud count fails to state a claim.  You're saying that it may be that when and if the case gets to summary judgment, you'll have a viable motion, but on the pleadings you're not attacking it.
>
> MR. SOTTILE:  That is correct, your Honor.
>
> . . .
>
> THE COURT: By the way, just to be clear, I wasn't in any sense suggesting that there was or wasn't a viable such motion, only in the event there was such a motion, the rational course of administration seemed to favor resolving that motion and only then making a judgment whether or not abstention is merited, on the theory that had the motion been meritorious the issue would be mooted. There would be no federal claim to keep us here had the motion been granted. Then we would be where we are now.
>
> MR. SOTTILE: We are sensitive to the Court's point.  If we had had such a motion, we would have brought it early for precisely that reason.  If we had had such a motion, we would have brought it early.

*Id.* at 4–5.  Counsel for the remaining defendants agreed:

> THE COURT: I take it you're not proposing, if the case stays here, to move to dismiss as to your clients, are you?
>
> MR. DOCKWELL: I'm sorry?

THE COURT: On the papers. You're not proposing to move to dismiss, are you?

MR. DOCKWELL: No.

THE COURT: So, in other words, any claim you would have to get out of this is going is going to be fact based after post discovery?

MR. DOCKWELL: Correct.

*Id.* at 36.

At the close of argument, the Court announced that it would not abstain from exercising jurisdiction. *Id.* at 37. The Court briefly set out its reasons for that ruling and stated that a formal decision setting out the Court's reasoning would follow shortly. *Id.* at 37–38. On March 6, 2014, the Court issued that decision.[4] Dkt. 58.

### 2. The Motions for Preliminary Relief

On March 3, 2014, plaintiffs applied, based on limited documentary evidence, for a temporary restraining order and preliminary injunction to prevent Ezriel from violating the non-compete agreements. *See* Dkt. 52.

On March 14, 2014, after briefing, the Court issued an opinion from the bench, denying the motion without prejudice but also setting a schedule for expedited discovery with regard to the non-compete issue. Dkt. 68, 101.

On May 1, 2014, after expedited discovery had been taken, plaintiffs renewed their motion for a preliminary injunction against Ezriel. Dkt. 113.

---

[4] On April 2, 2014, the Honorable Carolyn E. Demarest, acting in recognition of this Court's decision to exercise jurisdiction, dismissed the Brooklyn Action "without prejudice to a motion to restore should the federal action not resolve all issues." *Preferred Fragrance, Inc., et al. v. Fragrance Acquisitions, LLC, et al.*, Index No. 505426/2013, (N.Y. Sup. Ct.), Dkt. 67.

On July 10, 2014, after briefing, argument, and three days of evidentiary hearings, the Court issued a preliminary injunction, enjoining Ezriel from violating his non-compete agreements.  Dkt. 156.

### 3.  The Instant Motion

On July 18, 2014, Ezriel, through new counsel, moved, under Federal Rule of Civil Procedure 60(b), to be relieved of the preliminary injunction against him, Dkt. 158–59, and filed a memorandum of law in support, Dkt. 160 ("Ezriel Rule 60 Br.").  He argued, for the first time, that this Court lacks jurisdiction over this case because the sole federal claim, the 10b-5 claim, fails to state a claim.  Ezriel also stated that, within a week, defendants intended to move to dismiss the Amended Complaint on the same grounds.  *Id.*  The Court ordered expedited and consolidated briefing of the Rule 60(b) motion and the motion to dismiss.  Dkt. 161.

On July 24, 2014, Preferred Fragrance and Ezriel separately moved to dismiss the FAC for lack of jurisdiction, Dkt. 167, 169–70, and filed memoranda of law in support, Dkt. 168 ("Preferred Br."), Dkt. 171 ("Ezriel Br.").  On July 30, 2014, plaintiffs filed an opposition.  Dkt. 175 ("Pl. Br.").  On August 1, 2014, Preferred Fragrance and Ezriel replied.  Dkt. 178 ("Preferred Reply Br.").  On August 4, 2014, Ezriel filed a separate reply in support of his motion to dismiss and his Rule 60(b) motion.  Dkt. 180 ("Ezriel Reply Br.").

## II.    Applicable Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).  A complaint is properly

dismissed, where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.  Accordingly, a district court must accept as true all well-pleaded factual allegations in the complaint, and draw all inferences in the plaintiff's favor.  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("*ATSI*").  However, that tenet "is inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.  A pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.

"Securities fraud claims are subject to heightened pleading requirements that the plaintiff must meet to survive a motion to dismiss."  *ATSI*, 493 F.3d at 99; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  A complaint alleging securities fraud must meet the requirements of Federal Rule of Civil Procedure 9(b).  *See ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009).  Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Specifically, Rule 9(b) requires that a complaint "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *ATSI*, 493 F.3d at 99.  "Allegations that are conclusory or unsupported by factual assertions are insufficient."  *Id.*

A complaint alleging securities fraud must also comply with the pleading requirements of the Private Securities Litigation Reform Act, 15 U.S.C. § 78u–4(b) (the "PSLRA").  *See Lewy v. Skypeople Fruit Juice, Inc.*, No. 11 Civ. 2700 (PKC), 2012 WL 3957916, at *7 (S.D.N.Y. Sept. 10, 2012) ("Courts must dismiss pleadings that fail to adhere to the requirements of the PSLRA.").  In particular, where a plaintiff's claims depend upon allegations that the defendant

has made an untrue statement of material fact or that the defendant omitted a material fact necessary in order to make the statements not misleading, the plaintiff "shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1). Thus, to plead a claim of securities fraud, plaintiffs "must do more than say that the statements . . . were false and misleading; they must demonstrate with specificity why and how that is so." *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004); *see also In re Austl. & N.Z. Banking Grp. Ltd. Sec. Litig.*, No. 08 Civ. 11278 (DLC), 2009 WL 4823923, at *7 (S.D.N.Y. Dec. 14, 2009).

In addition, a plaintiff pleading scienter in a securities fraud action "shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2). "For an inference of scienter to be strong, 'a reasonable person [must] deem [it] cogent and *at least as compelling* as any opposing inference one could draw from the facts alleged.'" *ATSI*, 493 F.3d at 99 (quoting *Tellabs*, 551 U.S. at 324) (alteration and emphasis in *ATSI*).

## III.   Discussion

Section 10(b) of the Exchange Act makes it unlawful to "use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe." 15 U.S.C. § 78j(b). The implementing SEC regulation, Rule 10b-5, in turn, provides that it is unlawful "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made,

not misleading." 17 C.F.R. § 240.10b-5.  To state a claim for securities fraud under § 10(b) and Rule 10b-5, a plaintiff must, therefore adequately plead these six elements: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2407 (2014) (citation omitted).

Defendants principally argue that the FAC fails to state a claim under Rule 10b-5 because it does not allege that they made any misrepresentations in connection with the purchase or sale of a security, because in the Transaction, Preferred Fragrance sold assets, not equity.  Defendants also make a number of secondary arguments: that the FAC does not adequately allege scienter, loss causation, or loss.  The Court treats these arguments in turn.

### A. In Connection with the Purchase or Sale of a Security

Defendants argue that, in the Transaction, Fragrance Acquisitions purchased only assets, not securities, and that defendants thus cannot have made a misrepresentation "in connection with the purchase or sale of any security."  15 U.S.C. § 78j(b); *see* Ezriel Br. 11 ("To be clear, none of the Plaintiffs purchased any securities from any of the Defendants or sold securities to any Defendant.").  The Court understands defendants thereby to make two arguments:  (1) that the transaction, as alleged, did not involve a "security"; and (2) that there was no misrepresentation with its purchase or sale.  The Court addresses these claims in turn.

Defendants argue first that the membership interests sold by plaintiffs do not qualify as "securities."  Ezriel Br. 15–16.  "LLC membership interests are not 'securities' unless they meet the definition of an 'investment contract' set forth in *SEC v. W.J. Howey Co.*, 328 U.S. 293, 300 (1946)."  *Automated Teller Mach. Advantage LC v. Moore*, No. 08 Civ. 3340 (RMB), 2009 WL

2431513, at *4 (S.D.N.Y. Aug. 6, 2009).  "To satisfy the *Howey* test, there must be '[i] an investment of money [ii] in a common enterprise [iii] with profits to come solely from the efforts of others.'"  *Id.* (quoting *Howey,* 328 U.S. at 300).

Significant here, "[t]he third prong of the *Howey* test is not met if, at the time of the investment, the investor possesses a 'reasonable expectation of significant investor control.'"  *Id.* (quoting *United States v. Leonard*, 529 F.3d 83, 88 (2d Cir. 2008)).  This "requires case-by-case analysis into the economic realities of the underlying transaction."  *Leonard*, 529 F.3d at 89 (2d Cir. 2008) (citation omitted).

In arguing that no security was involved here, defendants argue that, although the third *Howey* prong is usually an intensely factual one, here the pleadings show that there was a "reasonable expectation of significant investor control," because the FAC "alleges that nearly 99% of the members [in Fragrance Holdings] were Plaintiffs [specifically, the two Uni-World entities] and Ezriel."  Ezriel Reply Br. 5.  The FAC does not, however, allege that, at the time of the transaction the two Uni-World entities expected "significant investor control" over the resulting LLC.  To be sure, the FAC does allege facts that show the *potential* for such control to be exercised in the future:  It identifies "UWC" (a Uni-World entity) "as a private equity firm" which "seeks to invest in growing companies with [EBITDA] of at least $4 million that are at an inflection point, poised for additional growth.  *UWC provides capital, experience and management expertise* to bring these companies to their next level."  FAC ¶ 4 (emphasis added).  But, significantly, the FAC also alleges that Ezriel, the fragrance business's CEO and one of the selling parties, was contemporaneously designated to serve as the business's president and COO going forward.  *Id.* ¶ 79; *id.* Ex. B.

In sum, the allegations of the FAC do not permit the Court to find an expectation at the time of the transaction of "significant investor control."  Nor do the terms of the APA, which reflects the parties' complete agreement and which is incorporated by reference into the FAC, evince such an expectation.  *See* FAC ¶ 28; *id.* Ex. A; *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991).  As the Second Circuit anticipated in *Leonard* would often be the case, the question as to the parties' expectations of control at the time of the transaction is highly fact-dependent.

This is, however, a potentially fruitful area for discovery to probe.  The defense will be at liberty, following discovery, to move for summary judgment on this ground, should it conclude, based on the evidence adduced, that a colorable challenge to the Rule 10b-5 claim can be made on the ground that the parties reasonably expected "significant investor control" at the time of the transaction.

Defendants also assert, as a factual matter, that "[p]laintiffs formed Holdings and hired their own agents to manage the fragrance company."  Ezriel Br. 15.  But this representation does not avail defendants on this motion to dismiss, for two reasons.  First, it is axiomatic that the Court cannot consider a defendant's factual assertion in support of a motion to dismiss.  In resolving such a motion, the Court is, instead, limited to considering the Amended Complaint and the materials referenced in it.  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–55 (2d Cir. 2002).  Second, in any event, plaintiffs' actions following the transaction, including steps they allegedly took to manage the business, such as the retention of "their own agents" to manage the business, may, or may not, bear on whether the parties *at the time of the transaction* reasonably expected "significant investor control."  Discovery must be had before defendants can seek to prevail on such a factual claim.  Accordingly, "[w]hether or not the [Fragrance

14

Holdings] membership interests are ultimately determined to be investment contracts is more appropriately addressed in a summary judgment motion." *Automated Teller*, 2009 WL 2431513, at \*4 (citation omitted). Defendants' motion to dismiss on the ground that the FAC does not involve a purchase or sale of securities, therefore, is denied.

As to defendants' argument that no misrepresentation in connection with the purchase or sale of a security has been alleged, that claim is willfully blind to the FAC's allegations and to the terms of the APA. As the FAC recites, the APA recites that the "'total consideration'" paid by Fragrance Acquisitions included "'units of membership interest in [Holdings] representing 18.16% of the outstanding voter equity of [Holdings].'" FAC ¶ 29 (quoting APA § 2.2)); *see also id.* ¶ 8 (Preferred Fragrance "received $16,837,000 in cash and 18.16% of the outstanding voter equity of Holdings.").

This allegation satisfies the "in connection with" element of Rule 10b-5. The Second Circuit long ago held that "fraud pertaining to the consideration in a securities transaction is in connection with that transaction." *S.E.C. v. Drysdale Sec. Corp.*, 785 F.2d 38, 42 (2d Cir. 1986). Because the FAC alleges fraud pertaining to the sale of Preferred Fragrance's assets, it alleges fraud pertaining to the consideration for which it exchanged securities. And that, according to the Second Circuit, is enough to meet the requirement of Rule 10b-5 that the misrepresentation be "in connection with the purchase or sale of any security."

Indeed, judges in this District have repeatedly rejected the contention that the alleged fraud or misrepresentations must relate to the value of the securities purchased or sold. They have consistently held that fraud pertaining to assets given as consideration for securities satisfies the "in connection with" requirement. *See, e.g.*, *Janel World Trade, Ltd. v. World Logistics Servs., Inc.*, No. 08 Civ. 1327 (RJS), 2009 WL 735072, at \*7 (S.D.N.Y. Mar. 20, 2009)

("Griffin and Francis both assert that the 'in connection with' element is not satisfied because the Purchase Agreement was merely an asset sale in which the consideration happened to include securities. However, 'Rule [10b–5], like § 10(b) itself, broadly prohibits deception, misrepresentation, and fraud 'in connection with the purchase or sale of any security.'") (quoting *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 78 (2006)) (other citation omitted); *Nationwide Cellular Serv., Inc. v. Am. Mobile Commc'ns, Inc.*, No. 90 Civ. 6493 (LBS), 1991 WL 233284, at *4 (S.D.N.Y. Oct. 29, 1991) (rejecting contention that "the alleged fraud or misrepresentations must relate to the value of the securities purchased or sold, not just to the underlying transaction embodying their sale," explaining that "numerous cases . . . make clear that fraud pertaining to the *consideration* for a securities transaction does satisfy the requirement," and holding that "since Nationwide's complaint clearly states that the AMC defendants misrepresented the value of AMC's assets, and that those assets were the primary consideration for the transfer of its 250,000 shares of stock, Nationwide has satisfied its burden of pleading a fraud 'in connection with' the purchase or sale of a security").

In response, defendants assert that "the purchase or sale of securities must play a *major role* in the transaction." Ezriel Reply Br. 7 (emphasis added).  Defendants purport to locate this rule of law in *Chemical Bank v. Arthur Andersen & Co.*, 726 F.2d 930 (2d Cir. 1984) (Friendly, J.).  *See* Ezriel Reply Br. 7 ("Plaintiffs ignore that three sentences later *Chemical* states[,] 'The Act and Rule impose liability for a proscribed act in connection with the purchase or sale of a security; it is not sufficient to allege that a defendant has committed a proscribed act in a transaction *of which the pledge of a security is a part*.'") (quoting *Chemical Bank*, 726 F.2d at 943) (emphasis in Ezriel Reply Br.).

Defendants, however, misread *Chemical Bank*.  That case turned on the fact that the

security at issue was *pledged as collateral*, and no misrepresentation had been made as to the

collateral; it did not turn on the fact that the security was only one part of the transaction.  *See*

*Chemical Bank*, 726 F.2d at 943 ("Andersen is not alleged to have deceived the Banks with

respect to the pledge of the Elsters stock; the Banks got exactly what they expected.  Their

showing is simply that but for Andersen's description of Frigitemp they would not have renewed

the Frigitemp loans or made the Elsters loan which Frigitemp guaranteed, and that if they had not

done this, there would have been no pledge of Elsters' stock.  Such 'but-for' causation is not

enough.  The Act and Rule impose liability for a proscribed act in connection with the purchase

or sale of a security; it is not sufficient to allege that a defendant has committed a proscribed act

in a transaction of which the pledge of a security is a part."); *id.* at 945 ("while the pledge of the

Elsters stock was a sale of a security by Frigitemp and a purchase by the Banks, Andersen's

alleged misrepresentations concerning Frigitemp (but not Elsters) were not in connection with

the sale or purchase of the Elsters stock under § 10(b) of the 1934 Act and Rule 10b-5").

The Second Circuit's later decisions underscore that *Chemical Bank* turned on the fact

that the collateral transaction, which involved securities, was separate from the business

transaction in which there was a misrepresentation, which did not.  *Drysdale*, 785 F.2d at 43

("*Chemical Bank* distinguished *Weaver*, noting that the misrepresentations in *Weaver* induced

the pledge, whereas the misrepresentations in *Chemical Bank* induced the banks to make a loan

collateralized in part by a pledge.  The distinction is that in *Weaver*, as in the instant case,

securities were transferred as a direct result of a misrepresentation, whereas in *Chemical Bank*

the direct result of the misrepresentations was a loan and not a securities transfer."); *see also id.*

at 42 ("*Chemical Bank* states that fraud pertaining to the consideration in a securities transaction

is in connection with that transaction."). Defendants, tellingly, do not cite any case in which a court had adopted their broad and eccentric interpretation of *Chemical Bank*. *See* Ezriel Reply Br. 7–9.

Defendants do try to distinguish *Janel* and *Nationwide Cellular*, the district court cases denying motions to dismiss based on *Chemical Bank*, on the grounds that, in those cases, the securities were the primary consideration paid. *Id.* at 8–9. But defendants point to nothing in *Janel* suggesting that that decision turned on the "primary" status of the securities in the transaction. And in *Nationwide Cellular*, the court there noted that the "*assets* were the primary consideration" for the transfer of the securities. 1991 WL 233284, at *4 (emphasis added). Here, similarly, Preferred Fragrance's assets are alleged to have been the primary consideration for the transfer of the membership interests in Fragrance Holdings.

### B. Defendants' Other Arguments as to the Rule 10b-5 Claim

Defendants also make a number of secondary arguments. The Court treats these in turn.

First, defendants assert that the FAC does not adequately allege loss causation. But defendants appear to be confused as to the relevant allegations. Defendants appear to construe the FAC to allege loss causation in relation to the $10.7 million that Uni-World paid Fragrance Holdings for equity in Holdings, and that Fragrance Holdings then paid Fragrance Acquisitions for equity in Acquisitions. *See* Ezriel Br. 16; FAC ¶ 31. But the sequential transfer of that $10.7 million is not the focus of the FAC's claims as to loss causation. Rather, the FAC alleges that the defendants' fraudulent representations and omissions (chronicled above) caused Fragrance Acquisitions to pay an inflated price to Preferred Fragrance, and that the inflated price was paid in both cash and equity. *See, e.g.*, FAC ¶¶ 2, 29. The FAC's theory of loss causation is thus that

Acquisitions would have paid less—in cash, equity, or both—but for defendants' fraudulent representations and omissions.  That is a viable theory of loss causation.

Second, defendants argue that plaintiffs have not suffered any loss because plaintiffs later re-claimed from Ezriel the 18.16% interest in Acquisitions from Ezriel, in exchange for $450.  Def. Br. 17 (citing an excerpt from Ezriel's deposition).  Again, the Court, in resolving a motion to dismiss, cannot consider a fact adduced in discovery, let alone a factual claim by a defendant of adequate remediation.  As noted, the FAC alleges that Acquisitions paid too high a price for Preferred Fragrance, in cash and equity.  *See, e.g.*, FAC ¶¶ 2, 29.  It thereby satisfactorily alleges loss.  Defendants are at liberty, of course, to continue to pursue this point in discovery, and to move for summary judgment if they believe the facts adduced in discovery support a meritorious motion.

Third, defendants argue that the FAC does not adequately allege scienter.  Def. Br. 18.  Defendants once again fail to focus on the pertinent allegations.  Defendants assert that the FAC does not allege that "Ezriel and Harry had knowledge that their misrepresentation and/or omissions would cause the Uni-World Plaintiffs to 'overfund' the Fragrance Defendants," that "the $10.7 million figure was proportionally related in any way to the information that Ezriel and Harry omitted to disclose," or that "Harry and Ezriel acted with an intent to cause Plaintiffs to 'overfund' the new fragrance business."  *Id.*  The FAC does, however, allege the following: that plaintiffs relied on "information about sales to important customers and amounts paid to important suppliers," that "the parties analyzed and discussed at length the correct value for [Preferred Fragrance's] EBITDA," and that "[d]efendants were well aware that [Preferred Fragrance's] EBITDA was a critical determinant of the purchase price of [its] assets."   FAC ¶¶ 23–25.  The FAC's allegations reasonably support the inference—indeed, it is the only

reasonable inference—that Ezriel and Harry were aware that the purchase price plaintiffs were willing to pay depended on the false and incomplete representations that Ezriel and Harry had allegedly made about Preferred Fragrance's revenues and expenditures.

Fourth, defendants argue that the FAC's allegation that defendants misclassified perfume shipments as nonhazardous does not support a claim for securities fraud, because "'[t]he federal securities laws 'do not require a company to accuse itself of wrongdoing.'" Def. Br. 19 (quoting *Richman v. Goldman Sachs Group, Inc.*, 868 F. Supp. 2d 261, 273 (S.D.N.Y. 2012)). But the FAC's point in alleging misclassification is, of course, not that Preferred Fragrance should have reported itself to the authorities. It is that Preferred Fragrance thereby inaccurately represented its business costs to its prospective buyers.

Fifth, defendants mystifyingly insist that the outcome of the instant motions is dictated by *Fiero v. FINRA*, 660 F.3d 569 (2011). *See* Preferred Reply Br. 1–7. *Fiero* held that the Financial Industry Regulatory Authority (FINRA) lacks authority under the securities laws to bring court proceedings to enforce its own fines. 660 F.3d at 577. Defendants do not explain why *Fiero* is relevant, let alone dispositive, here. To be sure, *if* the Rule 10b-5 claim did not state a claim, this Court would lack federal question jurisdiction over this case. But the Court cannot assume that conclusion. And *Fiero* does not assist the Court in determining whether the FAC states a claim under Rule 10b-5.

In sum, none of defendants' secondary arguments as to the 10b-5 claim has any force. Accordingly, defendants' motions to dismiss the 10b-5 claim are denied. The Court retains federal question jurisdiction over this case.

### C.  Ezriel's Argument for Reconsideration on the Facts

Finally, Ezriel improperly argues, for the first time in his reply brief, that his Rule 60(b) motion should be granted because this Court's July 10, 2014 included erroneous findings of fact. Ezriel Reply Br. 13–15.  The Court treats this as a motion for reconsideration.  *See* Ezriel Reply Br. (entitled "Memorandum of Law in Further Support of Ezriel Polatsek's Motion to Dismiss the Amended Complaint and Motion for Reconsideration").

The standard governing motions for reconsideration under S.D.N.Y. Local Civil Rule 6.3 "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp. Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).  Such a motion is "neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have been previously advanced." *Associated Press v. U.S. Dep't of Def.*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005); *see also Goonan v. Fed. Reserve Bank of N.Y.*, No. 12 Civ. 3859 (JPO), 2013 WL 1386933, at *2 (S.D.N.Y. Apr. 5, 2013) ("Simply put, courts do not tolerate such efforts to obtain a second bite at the apple.").

Ezriel does not point to a single piece of evidence that the Court overlooked in its lengthy, comprehensive and emphatic preliminary injunction decision.  Instead, Ezriel simply disagrees with the inferences this Court drew from the factual record, including the glaring inconsistencies and reversals in his testimony and in the testimony of his brother, Abraham Polatsek.  But a disagreement with the factfinder as to his credibility determinations, or its assessment of the evidence received, does not constitute "data that the court overlooked."  It is,

therefore, not a proper basis for a motion for consideration.  Accordingly, Ezriel's motion for reconsideration on this ground is denied.

## CONCLUSION

For the foregoing reasons, defendants' motions to dismiss the 10b-5 claim are denied, as is Ezriel's Rule 60(b) motion for relief from the preliminary injunction.  The Clerk of Court is respectfully directed to terminate the motions pending at docket numbers 167, 169, and 170.

The Court previously directed the parties to meet and confer to attempt to reach agreement on the amount of reasonable fees plaintiffs incurred in obtaining the preliminary injunction.  The parties shall meet and confer and, by August 27, 2014, inform the Court whether they have reached agreement.  If they have not, the Court will set a briefing schedule as to the issue of reasonable fees.

Separately, the Court notes that, pursuant to the Court's July 21, 2014 decision on plaintiffs' motion for leave to amend, plaintiffs were to file a Second Amended Complaint consistent with that decision by July 23, 2014.  *See* Dkt. 166 at 25.  The docket reflects no such filing.  Accordingly, by August 13, 2014, plaintiffs are to file a Second Amended Complaint consistent with the decision at docket number 166, or file a letter stating that they wish to forego that right and will continue this litigation with the FAC as the operative complaint.  If plaintiffs file a Second Amended Complaint, then by August 27, 2014, the parties shall meet and confer and submit (1) a joint letter setting forth a proposed schedule for the remainder of discovery and for the filing and briefing of any motions by the new defendants to dismiss the Second Amended Complaint; (2) a revised proposed case management plan; and (3) a statement of whether the parties believe that an initial pretrial conference, this time involving the new defendants, would be productive.

SO ORDERED.

Paul A. Engelmayer

Paul A. Engelmayer
United States District Judge

Dated: August 8, 2014
       New York, New York