UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
                                      :

UNI-WORLD CAPITAL L.P., UNI-WORLD CAPITAL  :
AIV, L.P, FRAGRANCE HOLDINGS, LLC, and
FRAGRANCE ACQUISITIONS, LLC,              :

                             Plaintiffs,      :

                      -v-               :

PREFERRED FRAGRANCE, INC., HARRY      :
POLATSEK, EZRIEL POLATSEK, SARAH
POLATSEK, SOLOMON TYRNAUER,        :
BENT PHILIPSON, BENJAMIN LANDA,
and JOSEPH RUBINSTEIN,             :

                            Defendants.   :

------------------------------------------------------------------------X

13 Civ. 7204 (PAE)

<u>OPINION & ORDER</u>

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/28/2015

PAUL A. ENGELMAYER, District Judge:

    This lawsuit involves claims arising out of plaintiffs' acquisition of an imitation-fragrance business. Plaintiffs bring, in essence, two sets of claims. First, they claim that they purchased that business based on fraudulent misrepresentations by defendants, in violation of § 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b). Second, plaintiffs claim that after they had acquired defendants' business, defendants competed against them in violation of various provisions of New York law.

    Discovery is ongoing. Pending before the Court is a motion by one defendant, Abraham Polatsek ("Abraham"),[1] to dismiss the single claim against him, for unjust enrichment. For the following reasons, Abraham's motion is granted.

---

[1] For the sake of clarity, because there are multiple Polatsek defendants, the Court refers to each Polatsek by first name.

## I.   Background

The Court assumes familiarity with the facts of this case, including those set out in the Court's four previous written decisions. *See* Dkt. 58 ("March 6, 2014 Opinion"); Dkt. 156 ("July 10, 2014 Opinion"); Dkt. 166 ("July 21, 2014 Opinion"); Dkt. 181 ("August 8, 2014 Opinion"). The Court here sets forth only those facts most germane to the pending motion.

### A.   Facts Alleged in the Second Amended Complaint[2]

Preferred Fragrance, Inc. is in the business of selling "designer-inspired fragrance products," *i.e.*, imitation fragrances, to retail chain stores such as Family Dollar and CVS. SAC ¶ 23. In late 2011, Uni-World Capital, L.P. and Uni-World Capital AIV, L.P. (collectively, "Uni-World")—acting through Fragrance Acquisitions, LLC and Fragrance Holdings, LLC, two entities that Uni-World had created[3]—acquired Preferred Fragrance for $24.5 million. *Id.* ¶¶ 29, 31–32. The Asset Purchase Agreement ("APA") contained a non-compete covenant and a confidentiality provision. *Id.* ¶¶ 43–47.

After the acquisition, Ezriel Polatsek ("Ezriel"), who had been the CEO of Preferred Fragrance, entered into an employment agreement to become president and chief operating officer of Fragrance Acquisitions. *Id.* ¶¶ 3, 48. As part of this agreement, Ezriel signed another non-compete covenant and a confidentiality provision. *Id.* ¶¶ 54–55. Beginning in April 2013, however, Ezriel breached both covenants by participating in two rival ventures, Ouleaf Inc. and Exceed LLC. *Id.* ¶¶ 4, 10, 100–50. Specifically, plaintiffs allege that Ouleaf was formed in

---

[2] For the purpose of resolving the motion to dismiss, the Court assumes all facts pled in the Second Amended Complaint, Dkt. 182 ("SAC"), to be true, drawing all reasonable inferences in favor of the plaintiff. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

[3] The Court refers to the two Uni-World entities and the two Fragrance entities, collectively, as "plaintiffs."

April 2013 to "misappropriate [Fragrance Acquisitions'] products and sell exact replicas to [their] customers." *Id.* ¶ 102.  Ouleaf was "able to infiltrate [Fragrance Acquisitions'] customer base so swiftly and significantly because of Ezriel Polatsek's knowledge of and ties to the industry." *Id.* ¶ 136.  As a result of competition from Ouleaf, plaintiffs lost business with Dollar General and other customers. *Id.* ¶¶ 137–39.  Exceed, for its part, is a company that sells items ranging from toys to automotive supplies. *Id.* ¶ 140.  In August 2013, Exceed, under Ezriel's leadership, began marketing, producing, and distributing a new fragrance brand—a business opportunity Ezriel could have brought to Fragrance Acquisitions. *Id.* ¶ 146–50.

Abraham, Ezriel's brother, was an employee of Preferred Fragrance and is now a salesperson for Ouleaf. *Id.* ¶ 17.  He is also employed by Exceed in some capacity. *Id.* ¶ 105. Abraham was involved in Ouleaf's formation, *id.* ¶ 103, and has "held himself out as Ouleaf's moving force," *id.* ¶ 104.  Plaintiffs allege, however, that Abraham is merely a puppet for Ezriel: Although Abraham is the public face of Ouleaf, Ezriel "run[s] Ouleaf's sales and operations from behind the scenes." *Id.* ¶ 104.  And whereas Abraham "has very little sales experience" and "has been unsuccessful," Ezriel "is a seasoned, successful salesman," who "has admitted under oath to introducing Ouleaf to at least one customer of [Fragrance Acquisitions] for the purpose of trying to sell Ouleaf's products." *Id.* ¶ 105.  By assisting Ezriel's wrongdoing, including by selling infringing products and using Fragrance Acquisitions' proprietary information, Abraham received profits for himself. *Id.* ¶¶ 213–16.

### B.   Procedural History

On October 11, 2013, plaintiffs filed the original Complaint in this action. Dkt. 1.  It alleged one claim under federal law, specifically, a violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 (the "10b-5 claim"); it also alleged state-law claims for

common-law fraud and breach of contract, sought declaratory judgments that the termination of Ezriel's employment had been for cause and that the non-complete clause is valid and enforceable, and sought attorneys' fees. *Id.*

At the time this action was commenced, Ezriel and Preferred Fragrance had a declaratory judgment action pending in New York State Court. *See Preferred Fragrance, Inc., et al. v. Fragrance Acquisitions, LLC, et al.*, Index No. 505426/2013 (N.Y. Sup. Ct. filed Sept. 13, 2013). Plaintiffs therefore moved to stay or dismiss the state-court action, Dkt. 43, at 7–8; defendants moved to stay or dismiss this case, Dkt. 23–25, 27–29. Defendants argued that the Court should abstain from hearing this case under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976) and that plaintiffs' sole federal claim, the 10b-5 claim, was deficiently pled. *See* Dkt. 24, 28. On January 7, 2014, plaintiffs filed the First Amended Complaint, which attempted to cure the asserted defect in the 10b-5 claim. *See* Dkt. 32 ("FAC") ¶ 130. On January 24, 2014, defendants renewed their motions to stay or dismiss this action in favor of the state-court action. Dkt. 34–39. On March 6, 2014, following briefing and argument, *see* Dkt. 43–44, 47–48, 56, the Court ruled that it would not abstain from exercising jurisdiction. Dkt. 58.[4]

On March 3, 2014, plaintiffs applied for a temporary restraining order and preliminary injunction to prevent Ezriel from violating the non-compete agreements. *See* Dkt. 52. On March 14, 2014, after briefing, the Court denied the motion without prejudice. *See* Dkt. 68, 101. On May 1, 2014, following expedited discovery, plaintiffs renewed their motion. Dkt. 113–15. On

---

[4] On April 2, 2014, the Honorable Carolyn E. Demarest, acting in recognition of this Court's decision to exercise jurisdiction, dismissed the state-court action "without prejudice to a motion to restore should the federal action not resolve all issues." *Preferred Fragrance, Inc., et al. v. Fragrance Acquisitions, LLC, et al.*, Index No. 505426/2013 (N.Y. Sup. Ct.), Dkt. 67.

July 10, 2014—after briefing, argument, and three days of evidentiary hearings—the Court

issued a preliminary injunction, based on detailed fact-finding, enjoining Ezriel from violating

his non-compete agreements. Dkt. 156. On July 18, 2014, Ezriel moved under Federal Rule of

Civil Procedure 60(b) to be relieved of the preliminary injunction against him. Dkt. 158–60. On

August 8, 2014, the Court denied that motion. Dkt. 181, at 21–22.

On June 16, 2014, plaintiffs moved for leave to file a Second Amended Complaint

("SAC") based on additional facts they had learned during discovery. Dkt. 143–45. Plaintiffs

alleged, in essence, that Ezriel and proposed additional defendants had devised a scheme to copy

Fragrance Acquisitions' business model and to sell similar imitation fragrance products to its

customers. *See* Dkt. 145, Ex. 1 ("Proposed SAC"). Based on these facts, plaintiffs proposed to

add 11 causes of action, including fraud, copyright infringement, trade dress infringement, unfair

competition, tortious interference with business relationships, breach of contract, breach of

fiduciary duty and aiding and abetting the same, unjust enrichment, and civil conspiracy. *See id.*

They also proposed to add five defendants: Abraham, Ouleaf, Exceed, Qian Liu (the owner of

Ouleaf), and Onlyou Cosmetics (a supplier for both Fragrance Acquisitions and Ouleaf). *See id.*

On July 21, 2014, after briefing, the Court granted the motion in part and denied it in

part. Dkt. 166. The Court allowed plaintiffs to add a breach of contract claim against Ezriel and

an unjust enrichment claim against four new defendants—Abraham, Ouleaf, Liu, and Onlyou.[5]

*Id.* at 25. However, the Court held that it would be futile to grant plaintiffs leave to amend to

add the nine other proposed claims. *Id.* at 6–22. In brief, the Court found that the proposed

fraud and breach of fiduciary duty claims were duplicative of the breach of contract claim, *id.* at

---

[5] The Court denied plaintiffs' motion to add Exceed as a defendant because it found that the only claim asserted against Exceed, for breach of fiduciary duty, was futile. *Id.* at 10.

6–10; defendants' product designs were not sufficiently similar to plaintiffs' to support claims of copyright or trade dress infringement, *id.* at 10–19; and the allegations of consumer confusion were not sufficient to state a claim for unfair competition, *id.* at 19–21.  On August 13, 2014, plaintiffs filed the SAC, revised in compliance with the Court's order.  Dkt. 182 ("SAC").

On July 24, 2014, Preferred Fragrance and Ezriel separately moved to dismiss the Amended Complaint.  Dkt. 167–72.  Defendants principally argued that plaintiffs failed to state a claim under Rule 10b-5, the only federal cause of action included in any iteration of the pleading, and the Court therefore lacked subject matter jurisdiction over the case.  *See id.*  On August 8, 2014, again after briefing, the Court denied the motions.  Dkt. 181.[6]  The Court held, *inter alia,* that plaintiffs had adequately alleged that their acquisition of Preferred Fragrance involved the transfer of securities, *id.* at 12–18, and had sufficiently pled the other elements of a 10b-5 claim, namely, loss causation, economic harm, and scienter, *id.* at 12–20.

On October 10, 2014, the parties entered stipulations voluntarily dismissing the claims against Ouleaf, Liu, and Onlyou.  Dkt. 235, 240.  As such, Abraham is the only remaining defendant named in the unjust enrichment claim.  *See* SAC ¶¶ 213–16.

C.   **The Instant Motion**

On October 14, 2014, Abraham filed a motion to dismiss the unjust enrichment claim against him, Dkt. 238, along with a memorandum of law, Dkt. 239 ("Def. Br.").  On November 4, 2014, plaintiffs filed a memorandum of law in opposition to Abraham's motion.  Dkt. 248 ("Pl. Br.").  On November 11, 2014, Abraham submitted his reply.  Dkt. 250 ("Def. Reply").

---

[6] The Court resolved both Ezriel's motion for relief from the preliminary injunction, Dkt. 159, and defendants' motions to dismiss, Dkt. 167, 169, in its August 8, 2014 Opinion, Dkt. 181.

## II.   Applicable Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.  Although a district court must accept as true all well-pled factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor, *Steginsky v. Xcelera Inc.*, 741 F.3d 365, 368 (2d Cir. 2014), that tenet "is inapplicable to legal conclusions," *Iqbal*, 556 U.S. at 678.

## III.   Discussion

"Under New York law, an unjust enrichment claim lies when 'the defendant has obtained a benefit which in equity and good conscience should be paid to the plaintiff.'" *Rose v. Rahfco Mgmt. Grp., LLC*, No. 13 Civ. 5804 (VB), 2014 WL 7389900, at *7 (S.D.N.Y. Dec. 15, 2014) (quoting *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012)).  "A claim for unjust enrichment requires that the '(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover.'" *Prickett v. N.Y. Life Ins. Co.*, 896 F. Supp. 2d 236, 249 (S.D.N.Y. 2012) (quoting *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 55 (2d Cir. 2011)).

Plaintiffs allege that Abraham is employed by Ouleaf and Exceed, SAC ¶ 105, and it is fair to infer that he was compensated for that work. *See* Pl. Br. 7.  Accordingly, the decisive issue is whether that enrichment came at plaintiffs' expense.  The SAC suggests four theories of

7

unjust enrichment: that (1) Ouleaf—and, by extension, Abraham—profited from ripping off plaintiffs' product designs, (2) Abraham benefitted from use of plaintiffs' proprietary information, (3) Abraham profited from Ouleaf's and/or Exceed's sales to plaintiffs' customers, and (4) Abraham knowingly participated in and benefitted from Ezriel's alleged wrongdoing. The Court addresses each theory in turn.

First, plaintiffs allege that Abraham, in his capacity as an Ouleaf employee, "is a moving, conscious and active force" in the "misappropriation and infringement of [Fragrance Acquisitions'] product designs." SAC ¶ 17; *see also id.* ¶¶ 120–33, 214. As to this claim, it is significant that, in resolving plaintiffs' motion to add copyright and trade dress infringement claims to their pleading, the Court considered whether Ouleaf's product designs are substantially similar to Fragrance Acquisitions' product designs. The Court concluded, as a matter of law, that they are not. *See* August 8, 2014 Opinion, at 11–16. Although plaintiffs allege that Ouleaf copied Fragrance Acquisitions' designs, SAC ¶¶ 121–24, the images of the products attached to the SAC contradict that characterization, *see id.* Exs. C–H. For example, plaintiffs' fragrance entitled "Hottest" and Ouleaf's fragrance named "Beyond Hot" are both "impressions" of "Beyonce Heat." *Id.* ¶ 122. The product designs share a red-and-orange color scheme intended to evoke heat, but that is not a protectable element, and the similarities end there: "Hottest" features a floral design and flame images, while "Beyond Hot" uses cloud images and solid colors. *See* SAC Ex. C, Ex. F. Just as no reasonable jury could find that defendants had infringed plaintiffs' copyright or trade dress, no reasonable jury could find that Abraham, through Ouleaf, was enriched by ripping off plaintiffs' product designs. *See* August 8, 2014 Opinion, at 10–19.

Second, plaintiffs claim that Abraham used proprietary information he obtained while employed by Preferred Fragrance to help Ouleaf and Exceed compete with Fragrance Acquisitions.  SAC ¶ 215.  Such legal conclusions "must be supported by factual allegations," *Iqbal*, 556 U.S. at 678, but the SAC contains no concrete factual allegations that bolster this claim:  It does not identify what proprietary information Abraham used, how or when he used it, or what business advantage he gained from it.  On the facts pled, therefore, a decision to sustain this claim could be arrived at only through improper speculation.

Third, plaintiffs allege that Ouleaf has "infiltrate[d]" Fragrance Acquisitions' customer base "swiftly and significantly."  SAC ¶ 136.  For example, Dollar General "sharply reduced" its usual order from Fragrance Acquisitions because it was able to receive "comparable products at lower prices," presumably from Ouleaf.  *Id.* ¶¶ 137–38.  Plaintiffs also allege that Ouleaf sold imitation fragrances to other retailers including Family Dollar and Rainbow, similarly reducing Fragrance Acquisitions' sales.  *Id.* ¶ 139.  But selling comparable products at lower prices is not unlawful; it is called competition, and it is a good thing.  Plaintiffs' theory would imply a cause of action any time a restaurant switched from Coke to Pepsi, a corporation ordered supplies from Staples instead of Office Depot, or a person chose Hanes over Fruit of the Loom.

Plaintiffs' fourth and final theory of unjust enrichment is that Abraham should be held secondarily liable for Ezriel's wrongdoing because he was aware of Ezriel's actions, enabled Ezriel's unlawful conduct, and profited from his knowing participation in Ezriel's scheme.  *See* Pl. Br. 4–5.  In certain circumstances, "unjust enrichment may occur indirectly."  *Elbit Sys., Ltd. v. Credit Suisse Grp.*, 917 F. Supp. 2d 217, 231 (S.D.N.Y. 2013).  But plaintiffs do not—and could not—assert a cognizable claim of unjust enrichment against Ezriel.  Rather, Ezriel's involvement in Ouleaf and Exceed is potentially actionable because it allegedly "breached

several provisions of the APA and Employment Agreement." SAC ¶ 207.  And because "unjust

enrichment is an alternative to [a] contract claim," it "requires the absence of an enforceable

agreement." *Podlin v. Ghermezian*, No. 13 Civ. 4117 (WHP), 2014 WL 2601416, at *6

(S.D.N.Y. May 28, 2014) (citing *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host

Corp.*, 418 F.3d 168, 175 (2d Cir. 2005)).  "'[T]he existence of a valid and enforceable written

contract governing a particular subject matter ordinarily precludes recovery in quasi contract

[*i.e.*, unjust enrichment] for events arising out of the same subject matter.'" *MacDraw, Inc. v.

CIT Grp. Equip. Fin., Inc.*, 157 F.3d 956, 964 (2d Cir. 1998) (quoting, *inter alia*, *Clark–

Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388 (1987)) (alteration in original).

This principle applies where "the contract is one between parties to the lawsuit" and where, as

here, "one party to the lawsuit is not a party to the contract." *Morgan Stanley & Co. Inc. v. Peak

Ridge Master SPC Ltd.*, 930 F. Supp. 2d 532, 546 (S.D.N.Y. 2013) (citation omitted).

Accordingly, the unjust enrichment claim against Abraham cannot be predicated on a breach of

contract by Ezriel.  *See, e.g.*, *BNP Paribas Mortgage Corp. v. Bank of Am., N.A.*, 949 F. Supp. 2d

486, 504 (S.D.N.Y. 2013) ("New York law generally does not allow a tort claim to be predicated

on a breach of contract but requires some independent duty.").

   Plaintiffs have therefore failed to state a claim of unjust enrichment against Abraham, and

Count V must be dismissed.  The dismissal is with prejudice:  Plaintiffs have been afforded

multiple opportunities to strengthen their pleadings.  *See* Dkt. 32, 166, 182.  And the substantive

defects in plaintiffs' unjust enrichment claim would render an additional opportunity to amend

futile.  *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## CONCLUSION

For the foregoing reasons, the Court grants defendant Abraham Polatsek's motion to dismiss plaintiffs' claim against him.  The Clerk of Court is directed to terminate the motion pending at docket number 238 and to terminate Abraham Polatsek as a defendant in this case.


SO ORDERED.

*Paul A. Engelmayer*

Paul A. Engelmayer
United States District Judge


Dated: January 28, 2015
      New York, New York